STATE of Missouri,
Plaintiff-Respondent,

v.

Jimmy Lee GOLLIDAY,
Defendant-Appellant.

No. 43351.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 18, 1982.

Motion for Rehearing and/or Transfer
Denied July 16, 1982.

Application to Transfer Denied
Sept. 13, 1982.

Christelle Adelman-Adler, Asst. Public Defender, Joseph W. Downey, Public Defender, St. Louis, for defendant-appellant.

Kristie Green, Asst. Atty. Gen., Jefferson City, George Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction by a jury of two counts of kidnapping and one count of attempted robbery in the first degree and the resultant three consecutive twenty-five year sentences imposed by the court pursuant to Sec. 558.016, RSMo 1978. We affirm the kidnapping convictions and reverse and remand the conviction for attempted robbery.

No question is raised of the sufficiency of the evidence so a brief statement of the facts will suffice. The evidence warranted a conclusion that defendant, masked and armed with a gun, broke into the home of the octogenarian victims in East St. Louis, Illinois, during the night. Defendant took from the couple the cash they had on hand and then discovered their bank book for a savings account in a St. Louis, Missouri bank. He then held the victims in their home until approximately 8:00 a. m. at which time all three left in the victims' car for the bank. Upon arrival at the bank the defendant sent the husband into the bank to withdraw $2000 from the account under a threat to kill the wife if the police were summoned. The husband alerted a bank official to the plot and the police were called. Upon their arrival they arrested defendant, still in the victims' car with the wife. Neither gun, nor mask, nor the money earlier taken was found. There was evidence that defendant had, shortly before leaving for St. Louis, left the home of the couple for the purpose, the defendant had stated, of talking to some men outside.

This brief excursion from the home followed one or more telephone calls by the defendant. Immediately prior to his arrest defendant told the police, falsely, that he was related to the female victim. After his arrest and following warnings concerning his constitutional rights, defendant volunteered a statement that the police "ain't got nothing on me because you didn't find no gun." Defendant presented evidence to establish his presence at home from 3:00 a. m. until 7:10 a. m. on the day of the crime.

On appeal the defendant raises two alleged errors in the admission of evidence and one alleged error in the instructions on attempted robbery. We deal with these in turn.

The first claim of error is that the court erroneously permitted a bank employee to testify that almost immediately after entering the bank the victim-husband approached the employee and stated to him:

> "You've got to help me. He's got my wife. He's going to kill her if I don't take my money out of the bank."

The witness further testified that the husband seemed upset and that following this statement was wandering around the bank despite the employee's admonition to get in line so as to appear to be making a withdrawal. Defendant contends the statement was hearsay. There are many recognized exceptions to the hearsay rule in instances where special circumstances ensure the trustworthiness of the assertions. One such exception is the res gestae doctrine, which refers to:

> "... those exclamations and statements made by either the participants, victims or spectators to a crime immediately before, *during*, or immediately after the commission of the crime, when the circumstances are such that the statements were made as a spontaneous reaction or utterance inspired by the excitement of the occasion and there was no opportunity for the declarant to deliberate and to fabricate a false statement. * * *

* * * * * *

"The essential test of whether a hearsay statement is admissible as a res gestae declaration is neither the time nor the place of the statement but whether it is a spontaneous statement produced by the event itself." *State v. Hook,* 432 S.W.2d 349 (Mo.1968) [1, 2] and [3, 4] (Emphasis supplied).

■ The evidence here establishes the applicability of the *res gestae* exception. The statement was made by an 83 year old victim *during* the commission of the crime and within a very short time after the victim had left the car after receiving a threat to the life of his wife of more than 60 years. The statement was made almost immediately after the husband entered the bank; it was volunteered and unsolicited. The husband was visibly upset and somewhat disoriented. The statement was clearly inspired by the excitement or fear of the occasion. There was no error in admitting the testimony.

Defendant next claims error in the trial court's action permitting the victim-wife to identify defendant in court. Some explanation of this contention is required. The record contains no indication that the wife gave a description of the kidnapper at the time of the crime, probably for the very logical reason that he was apprehended in her presence and a description was unnecessary. Within two months of the crime the wife's deposition was taken to preserve her testimony. At that deposition she identified defendant, who was present, as the person who had broken into her house, held her and her husband hostage, and driven with them to St. Louis. At an earlier trial nine months after the crime, the wife testified she did not see the kidnapper in the court room. Following a recess in that trial, the court refused to allow any further questioning of the witness concerning the identity of the kidnapper, based upon a report to the court by defense counsel and the clerk that certain relatives of the witness had, during the recess, pointed out to the witness where defendant had been and would be sitting. Following the recess, the witness on several occasions, and despite

instructions to the contrary, identified defendant as the kidnapper. A mistrial was eventually declared, not, however, as defendant contends because of the identifications, but because of a volunteered statement of a police officer that defendant had refused to make a statement after his arrest. In the earlier trial the witness testified that her relatives had not helped her in identifying defendant, but rather that as she continued to view defendant she recognized him. There was evidence that defendant's appearance between the crime and trial had changed. Based on suggestiveness of the identification at the first trial, defendant sought to prevent the wife-victim from making an in-court identification of defendant. The trial court refused to prevent such identification but did make elaborate arrangements to relocate defendant in the courtroom and to place two other black men in close proximity to him so that he would not be identified because of his location or his race. The wife immediately and positively identified defendant.

■ In evaluating the propriety of an in-court identification following a prior allegedly suggestive identification, we look to the totality of the circumstances to determine whether the in-court identification is reliable and not a misidentification. *Simmons v. United States,* 390 U.S. 377, l.c. 384, 88 S.Ct. 967, l.c. 971, 19 L.Ed.2d 1247 (1968); *Neil v. Biggers,* 409 U.S. 188, l.c. 199, 93 S.Ct. 375, l.c. 382, 34 L.Ed.2d 401 (1972); *Manson v. Braithwaite,* 432 U.S. 98, l.c. 114, 97 S.Ct. 2243, l.c. 2253, 53 L.Ed.2d 140 (1977).

■ Looking at the criteria listed in *State v. Higgins,* 592 S.W.2d 151 (Mo banc 1979) [13, 14] we find the following:
(1) The victim was with the kidnapper for 9 hours, much of it while he was unmasked, and so had adequate opportunity to view him,
(2) the circumstances were such as to indicate a high degree of attention by the victim,
(3) no prior description was given but a positive identification was made within two months of the crime at the deposition,

(4) the victim's identification at trial was positive and immediate,

(5) the time lapse of 10 months between crime and trial while long is not excessive; the time between crime and the identification at deposition was relatively brief.

There was an independent basis for the in-court identification other than the allegedly suggestive identification at the prior trial. In addition, it is arguable whether the prior identification was based upon suggestion. The defense attorney and apparently the clerk based their conclusion of suggestion upon physical actions they observed which they interpreted as suggestive; the witness denied that that was what the actions were. Further, it is difficult to conclude that defendant was misidentified. Identification was also made by the other victim and by police officers who apprehended him in the victim's car at the bank. We find no error in allowing the in-court identification.

■ Defendant's final point is that the verdict-directing instruction on attempted robbery in the first degree was erroneous because it failed to require a finding that defendant utilized or threatened to utilize a deadly weapon in the attempted robbery. Robbery in the first degree requires either serious physical injury (not present here) or involvement of a deadly weapon. Sec. 569.-020, RSMo 1978; *State v. Savage*, 621 S.W.2d 116 (Mo.App.1981) [4]. MAI–CR2d 2.04, Notes on Use requires submission of all essential elements of the crime *in the verdict-director.* Failure to submit an essential element of the crime in the verdict-director is prejudicial error. *State v. Bruce*, 564 S.W.2d 898 (Mo banc 1978) [2]. Such a failure is not cured by another instruction such as a definitional instruction. *State v. Burns*, 457 S.W.2d 721 (Mo 1970) [5].

We are aware of *State v. Barnett*, 611 S.W.2d 339 (Mo.App.1980) which seems to support a contention that because robbery in the first degree was defined in another instruction and that definition included use or threatened use of a deadly weapon as an element there was no error in the verdict-directing instruction. We are not convinced the *Barnett* case ruled the issue presented here. The error alleged there was that the instruction on stealing was at variance with the information because the verdict-director omitted a finding of "intent to deprive" the owner of the property. By looking to the definitional instruction the court concluded that no variance existed between the offense instructed on and the information. It is not clear that that was a holding that the instruction given was proper or error free. Here the question is not variance but correctness of the verdict-director. If *Barnett, supra,* holds that an essential element of the crime may be omitted from the verdict-director, we simply disagree.

■ The necessity that the deadly weapon element be included is of particular importance in this case where the omitted element is what distinguishes the crime charged from the also submitted lesser included offense of attempted robbery in the second degree. Sec. 569.030, RSMo 1978. The difference between first and second degree robbery submitted by the verdict-directors in this case was the threat to kill the wife *vis a vis* a threat to use physical force against her. That is not the statutory difference between the crimes. The question is by no means academic. Here there was substantial evidence that defendant had no gun at the time he and the victims left East St. Louis, and no weapon was found on him or in the vehicle when he was apprehended. Whether therefore the attempted robbery was effectuated through use of a deadly weapon (first degree robbery) or through threats of physical force (second degree robbery) was a question of fact for the jury upon which proper instructions were required. The failure to include in the verdict-director a hypothesis of involvement of a deadly weapon was reversible error.

Judgments on two counts of kidnapping affirmed; judgment on attempted robbery in the first degree is reversed and remanded.

SATZ and PUDLOWSKI, JJ., concur.