STATE of Missouri,
Plaintiff-Respondent,

v.

Ricky MILLS, Defendant-Appellant.

No. 46624.

Missouri Court of Appeals,
Eastern District,
Division Five.

May 29, 1984.

Richard L. Turner, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Lynne Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

A.J. SEIER, Special Judge.

The State charged defendant Ricky Mills with five counts of armed robbery for the robbery of five patrons at the Peach Pit Tavern on June 27, 1981, in the City of St. Louis, Missouri. Pursuant to a jury verdict of guilty on all five counts and evidence of a prior armed robbery conviction, the trial court sentenced the defendant as a prior offender to prison for consecutive terms of fifteen years, fifteen years, ten years, ten years, and ten years respectively, for a total of sixty years. The defendant challenges his convictions by asserting that the trial court: (1) improperly punished him five times for a single crime; (2) erred in overruling his Motion in Limine which requested the court to prohibit the State from offering any evidence or testimony regarding any crimes which may have occurred prior or subsequent to June 27, 1981; (3) abused its discretion in sentencing him to serve five consecutive sentences; and (4) erred in denying his Motion to Suppress Evidence.

The facts of the case may be briefly summarized. Testimony of eye witnesses revealed that the defendant and another man entered the Peach Pit Tavern on June 27, 1981, at approximately 11:50 p.m. Both men had nylon stockings pulled over their heads and faces. Defendant brandished a silver Derringer with a pearl handle. Both men ordered the bar's patrons to lie down on the floor. The defendant and his accomplice then took personal property from each of five patrons. (Counts I–V). Moments later, a witness saw a green Vega containing three people leave the vicinity.

Acting on a tip from an informant, St. Louis Police Detective James Eichelberger and other officers immediately proceeded to a residence located at Indiana and Chippewa Streets. They found a green Vega parked on the street, and they saw three men and two women in the back yard of a building. Upon seeing the officers, two of the men, one of whom was defendant, ran into the building. Officer Eichelberger chased the defendant up to the third floor roof of the building, where he saw the defendant throw a silver Derringer off the roof. The defendant said, "You've got me this time." Several items taken in the robbery were found on defendant's person. Meanwhile, Officer Daniel Stewart, who remained on ground level, saw the two females who had been with the defendant kicking pieces of identification into a basement stairwell. A subsequent warrantless search of the basement revealed wallets

and items of identification belonging to the victims of the robbery.

■ The defendant contends that he cannot be convicted of five separate robberies in a situation where he has simultaneously robbed five victims. In making this argument, the defendant has ignored a substantial body of Missouri case law.

The law of Missouri regarding this aspect of double jeopardy in robbery cases is well established. *State v. Johnson,* 499 S.W.2d 371, 375 (Mo.1973); *State v. Moton,* 476 S.W.2d 785, 788–90 (Mo.1972); *State v. Ashe,* 350 S.W.2d 768, 770 (Mo.1961); *State v. Cabell,* 539 S.W.2d 584, 587 (Mo.App. 1976). More than twenty years ago, the Missouri Supreme Court held that "where several persons are robbed at the same time, the offender may be indicted and convicted for the robbery of each person as a distinct offense." *Ashe,* at 770. Our Supreme Court has specifically declined to adopt the "same transaction" test proposed by the defendant. *Moton,* at 788–790. Robbery in the first degree requires either serious physical injury (not present here) or involvement of a deadly weapon. *State v. Golliday,* 637 S.W.2d 106, 109 (Mo.App. 1982). Here, the victims were ordered to lie on the floor by a man wielding a derringer, an object that appeared to be a deadly weapon. Valuables were then removed from each of the five victims. A separate robbery occurred as to each victim.

■ The defendant asserts that the trial court abused its discretion by sentencing him to serve his five sentences consecutively. The sentences, however, were within the range of punishment prescribed by Sections 569.020, 558.011.1(1) and 557.036 RSMo 1978 and 1982. There can be no complaint of excessive punishment when the sentences are within the limits imposed by law. *State v. Cook,* 440 S.W.2d 461, 463 (Mo.1969). Nothing in the record indicates that the trial court abused its discretion. *State v. Anderson,* 608 S.W.2d 466, 468 (Mo.App.1980).

The defendant contends that the trial court erred in admitting into evidence the testimony of Nicholas Paul Connell. Connell testified that he was presently serving a sentence in the city jail for burglary and that he had seen the defendant and Austin Gamble (the accomplice) together three or four times in June, 1981, prior to the date of the robbery, wearing nylon masks and in the possession of a chrome derringer. The defendant claims this testimony constituted impermissible evidence of other crimes of a "robbery-like nature." This point is also ruled against the defendant.

■ The law is well settled that evidence is relevant when it shows that the accused owned, possessed or had access to tools, implements, or any articles with which the particular crime was or might have been committed, and that he owned or had such weapons in his possession prior to or shortly after the commission of the crime. *State v. Stancliff,* 467 S.W.2d 26, 30 (Mo.1971). In the present case, Connell's testimony merely shows that in the weeks immediately preceding the crime, the defendant possessed or had access to a silver derringer and a nylon mask, both of which were articles used to commit this particular crime.

The defendant claims that the wallets, identification cards, and nylon mask found by the police in the basement of the home in which he was captured were improperly seized and admitted into evidence since the police did not have a search warrant. This point is ruled against the defendant.

■ The applicability of the Fourth Amendment to searches and seizures in Missouri is well recognized.

The Fourth Amendment as applicable to the States protects the right of the people to be secure in their residences by providing that search warrants shall be obtained upon probable cause supported by oath or affirmation. Despite the clear preference of the law for searches authorized by search warrants and despite the general principle that in order to search and seize, a warrant is to be obtained from a neutral and detached magistrate,

there have been carved out a few well-delineated exceptions.

*State v. Wiley*, 522 S.W.2d 281, 289 (Mo. banc 1975). Several exceptions to the warrant requirement exist, and include the following: (1) a search incident to a lawful arrest; (2) a protective search by an officer for weapons; (3) seizure of items falling within the "plain view" doctrine; (4) searches of automobiles upon probable cause; (5) searches upon consent; (6) searches upon exigent circumstances; (7) inventory searches; (8) seizure of evidence when the officer has seen a person "drop evidence"; and (9) seizure of abandoned property. *State v. Quinn*, 565 S.W.2d 665, 671 (Mo.App.1978). The seizure of the items in the present case was justified under at least two of the exceptions to the warrant requirement.

As the facts at the trial indicated, the defendant, who had been standing in a back yard with two females and another male, fled when he saw police officers approaching him. The police officers chased him all the way from the back yard up to the third floor roof of the building. Officer James Eichelberger, who chased defendant to the roof, saw him throw an object, later identified as the silver derringer used in the robbery, off the roof. Officer Daniel Stewart, who remained on ground level, saw the two females, who had been with defendant, kicking pieces of identification and cards into a basement stairwell. When the officers searched the basement shortly thereafter, they found wallets and pieces of identification of the victims of the robbery.

Exigent circumstances have been found to exist when drugs were located in a refrigerator at the defendant's home and the possibility existed that the drugs might be destroyed before a search warrant could be obtained. *State v. Wiley*, 522 S.W.2d 281, 290–91 (Mo. banc 1975). Similarly, in this case, exigent circumstances existed because Officer Stewart saw the evidence being kicked from plain view into the basement. Obviously, the likelihood was great that the evidence could be removed or destroyed before a search warrant could be obtained to enter the basement to seize the evidence.

Moreover, the fact that the items were in plain view before being kicked into the basement cannot be ignored. In a similar case, a robbery suspect was standing with a woman when the officer approached them. The suspect handed a bag to the woman. She placed the bag on a step on a porch. The court ruled that the seizure of the bag was reasonable. *State v. Quinn*, 565 S.W.2d 665, 672 (Mo.App.1978). The *Quinn* court cited numerous cases upholding the seizure of evidence after an officer has seen a person drop or hide the evidence. *State v. Baines*, 394 S.W.2d 312 (Mo.1965), *cert. denied*, 384 U.S. 992, 86 S.Ct. 1900, 16 L.Ed.2d 1008 (1965); *State v. Jefferson*, 391 S.W.2d 885 (Mo.1965); *State v. Boykins*, 434 S.W.2d 484 (Mo.1968); *State v. Hall*, 534 S.W.2d 508 (Mo.App. 1976).

The ultimate test of whether a search and seizure was impermissible is whether or not it was unreasonable. *State v. Wiley*, 522 S.W.2d 281, 291 (Mo. banc 1975); *State v. Quinn*, 565 S.W.2d 665, 672 (Mo.App.1978). Under the totality of the circumstances, the excursion into the basement to retrieve the items that had been kicked down the stairwell was not unreasonable. The test is not whether it is reasonable to obtain a warrant, but whether the seizure of the items under these circumstances was reasonable. *Quinn*, at 672. The Fourth Amendment does not require that the police blindly ignore evidence under these circumstances. *Quinn*, at 672. As in *Quinn*, the practical and reasonable action was for the officers to retrieve the items that they had seen being kicked down the steps.

The judgment is affirmed.

KAROHL, P.J., and FRED E. SCHOENLAUB, Special Judge, concur.