STATE of Missouri, Respondent,

v.

Michael WILLIAMS, Appellant.

Michael WILLIAMS, Appellant,

v.

STATE of Missouri, Defendant.

Nos. 65667, 67622.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 16, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 15, 1996.

Application to Transfer Denied
June 25, 1996.

---

Deborah B. Wafer, District Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Joanne E. Joiner, Assistant Attorney General, Jefferson City, for respondent.

SIMON, Judge.

Appellant, Michael Williams, appeals from his sentences, following a jury verdict, of a life term without parole for murder in the first degree, § 565.020.1, RSMo.1994 (all references shall be to RSMo.1994 unless otherwise indicated), and a consecutive life term for armed criminal action, § 571.015, in the Circuit Court of the City of St. Louis.

On appeal, appellant contends: (1) the trial court erred in overruling his *Batson* motion

because the state's offered explanation for striking a black venireperson was pretextual because the state did not strike similarly situated white venirepersons; (2) the trial court erred in overruling his motion for mistrial when a prosecutor and police detective interviewed him about an unrelated murder trial in which he was an endorsed witness and the motion court clearly erred in denying his Rule 29.15 motion because there was no actual prejudice; (3) the trial court erred in admitting evidence that he possessed a gun two months prior to the charged offense in that it constituted evidence of other crimes or bad acts; (4) the motion court clearly erred in finding that his counsel "was not ineffective for failing to object to the prosecutor's closing argument because it suggested the jury determine the level of guilt based upon a desired punishment"; and (5) the motion court clearly erred in failing to find that his counsel was ineffective for failing to object to the prosecutor's argument which "diminished the jury's responsibility for its decision." We affirm.

The sufficiency of the evidence is not in dispute, and is viewed in a light most favorable to the verdict. Rodney Carter (victim) and his friend Mario Thomas were visiting Mario's next door neighbor. While there, appellant arrived to retrieve his Medicaid card from another guest, Tonya. While Tonya was talking with appellant, victim said to Tonya, "Dang, Tonya, you sure pick them young." Appellant asked victim who he was talking to and victim replied, "I'm not talking to you; I'm talking to Tonya." As appellant was leaving the apartment, he replied, "You better check yourself before you wreck yourself."

Subsequently, Mario left to check the mailbox next door. As he opened the mailbox, he heard three gunshots and when he turned towards the apartment, he saw appellant standing directly in front of the apartment shooting toward it with a small handgun. After appellant finished shooting, he turned and ran down the street. Mario ran back to the residence and found victim on the floor with blood running down the side of his head.

The victim then stated, "he shot me." Subsequently, police recovered a .22 caliber bullet from the area on the floor where victim's head had been lying. An autopsy revealed that victim had suffered gunshot wounds to the head and the right side of his chest. The chest wound was determined to be the fatal shot.

Appellant was originally charged under the juvenile code with murder in the first degree. Subsequently, the juvenile court certified him to be tried as an adult. At the conclusion of the certification proceedings, appellant filed a "Notice of intent to remain silent and request for counsel" as to all, *inter alia,* questioning regarding "any crime anywhere."

While appellant was in jail awaiting trial on the charge, counsel for the defendant in an unrelated murder case questioned appellant regarding that unrelated murder, and appellant was endorsed as a defense witness in that case.

At his trial, after the state had rested its case, appellant presented only one witness, his cousin. His cousin testified that he drove appellant to the apartment in question and thereafter drove appellant to a location fifteen minutes away from the apartment. On cross examination his cousin admitted that when appellant returned to the car from the apartment, he was "teed off." Thereafter, the defense rested. The trial recessed for a lunch break.

During the break, the prosecutor from the previously mentioned unrelated murder case and Detective Stevens, a witness who had testified in the state's case in chief, questioned appellant regarding the unrelated murder. Appellant, however, did not answer their questions satisfactorily. As they were leaving the cell, appellant alleges that they told him that he could talk "now or on the stand."

Neither the court, nor the attorneys in the present case were given any prior notice of the interview. Later during the break, however, appellant's counsel learned of the interview through a colleague. Counsel imme-

diately brought the incident to the court's attention.

Counsel objected to the interview, contending that appellant was represented by counsel and therefore should not have been interviewed. The trial court, *sua sponte,* instructed the bailiffs to preclude any further interviews of appellant. The trial court asked counsel if any other relief was sought. Counsel moved to exclude Detective Stevens from testifying in rebuttal. The court denied counsel's motion, but cautioned all of the parties not to mention or testify about the incident or an immediate mistrial would be declared. Next, appellant moved for a mistrial based upon "the misbehavior" on the part of the prosecutor's office, which was promptly denied.

Next, the state presented its rebuttal evidence consisting of three witnesses, including Detective Stevens. The witnesses essentially testified that after leaving the apartment, appellant was not dropped off at a location fifteen minutes away, but rather one that was presumably closer.

After the state's rebuttal and outside of the presence of the jury, the trial court informed appellant of his right to testify and that the decision to testify was his alone. Appellant replied that he understood. Thereafter, appellant presented no surrebuttal evidence.

The jury found appellant guilty on all counts. Subsequently, he filed a motion for post-conviction relief, pursuant to Rule 29.15. In his amended Rule 29.15 motion, appellant asserted, *inter alia,* that his Fifth and Sixth Amendment rights were violated because during the interview he was told that he could answer the questions "now or on the stand." Appellant asserted that he understood this to mean that, if he were to take the stand in his own case, he could be questioned regarding the other murder charge. Further, appellant felt that he would be prejudiced because the jury would believe that he was a suspect or was involved in the other murder.

At the evidentiary hearing, appellant testified that as a result of the interview, he was deterred from testifying in his own defense in surrebuttal. Appellant's trial counsel testified that appellant did not indicate any fear of being held criminally responsible for the other crime. Further, counsel had spoken to appellant numerous times regarding whether he wanted to testify, and appellant never mentioned his concerns that the prosecutor would question him regarding the unrelated murder.

In its findings of fact and conclusions of law, the motion court found, *inter alia,* that: (1) appellant's testimony that the prosecutor's comments concerning answering their questions "now or on the stand" affected his decision whether to testify was not believable; (2) there was no Sixth Amendment violation because the Sixth Amendment is offense specific; and (3) there was no Fifth Amendment violation based upon appellant allegedly being deterred from testifying, because as a matter of fact appellant's decision to testify had not been affected because his testimony was "unbelievable" and he had already rested his case before the interview had occurred.

■ In his first point, appellant contends that the trial court erred in overruling appellant's *Batson* motion because the prosecutor's explanations for striking Venireperson Hill were pretextual. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1985). After appellant's *Batson* objection, the prosecutor stated the following reasons for its strike:

Ms. Hill, my primary reason for her, number one, I couldn't really get a read on where she was going, but the real problem I had with her is that she is a boss, an administrator at Washington University with twenty-one years of education.

I do not frankly like overly—I shouldn't say overly—extremely highly-education [sic] people. I think twenty-one years and being a boss, supervisor, administrator at a college situation, I've had bad experience with that on murder cases and I'm afraid— my feeling is that they tend to look too easily towards reasonable doubt.

She has a stepbrother that had to go to Court in this City and she—it's not as important, but I believe her to be forty-four and to be the age where she could have children around this gentleman's age. I'm afraid she would be a leader on the jury and I don't want her for that primary reason.

In response to the prosecutor's enunciated reasons for striking Venireperson Hill, appellant asserted that other venirepersons were similarly situated. Specifically, counsel stated that Venirepersons Dumais and Martin each had many years of education. The state responded that neither had any relatives who had been arrested. In denying appellant's motion, the court noted that:

With regard to Ms. Hill, while the Court is not entirely, should I say—while the Court is surprised that we could ever have jurors with too much education, the Court, based on the explanation as a whole and the voir dire as a whole, finds that the Court will accord credibility to the State's enunciated explanations. So the court will deny the motion.

■ We recently addressed the procedure to be followed for a *Batson* challenge: (1) the defendant must raise a *Batson* challenge to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the persons belong; (2) the state must then come forward with reasonably specific and clear race-neutral explanations for the strike; and (3) if the state provides such explanations, the defendant must then show that the state's proffered reasons for the strike were merely pretextual and the strikes were racially motivated. *State v. Dunn,* 906 S.W.2d 388, 391 (Mo.App. E.D.1995); *citing State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992). We further stated that:

In determining whether a defendant has carried the burden of proving purposeful discrimination, the trial court should view the plausibility of the state's explanation in light of the totality of the facts and circumstances of the case. *Parker,* 836 S.W.2d at

934, 939. Facts and circumstances which detract from or lend credence to the prosecutor's proffered explanation include: (1) the existence of similarly situated white jurors who were not struck; (2) the degree of relevance between the explanations and the case to be tried "in terms of the kind of crime charged, the nature of the evidence to be adduced, and the potential punishment;" (3) the prosecutor's demeanor or statements during voir dire; (4) the demeanor of the excluded venirepersons; (5) the trial court's past experiences with the prosecutor; and (6) other objective factors bearing on the state's motive to discriminate on the basis of race, such as the conditions prevailing in the community, and the race of the defendant, the victim, and the material witnesses. *Id.* at 939–940. "The state's failure to use all of its strikes against venirepersons of a racial minority, or the presence of a racial minority on the defendant's jury, are relevant factors for consideration only to the extent that they indicate that race was not the prosecutor's motive for the challenged strikes." *Id.* at 940.

The trial court's determination that there was no purposeful discrimination is a finding of fact which should not be disturbed on appeal unless clearly erroneous. *Parker,* 836 S.W.2d at 939 n. 7.

.    .    .    .    .

Because "much of the determination, by necessity, turns upon evaluation of intangibles such as credibility and demeanor," trial judges are vested with considerable discretion in determining whether a defendant has established purposeful discrimination. *Parker,* 836 S.W.2d at 934.

*Dunn,* 906 S.W.2d at 391.

Here, the record discloses that there were no similarly situated white jurors. First, Juror Smith had less education, and although arguably could be described as his own "supervisor" because he was self-employed, he had none of the other characteristics described by the prosecutor for striking Veni-

reperson Hill. Second, although Juror Harz had been convicted of a crime, which arguably compares with Ms. Hill's stepbrother, he had less education and none of the other enunciated characteristics. Further, the other alleged similarly situated white jurors had less education and none of the enunciated characteristics. The record also discloses that two black jurors remained on the panel. The trial court's finding is not clearly erroneous. Point denied.

In his second point, appellant contends: (1) the trial court erred in failing to grant a mistrial after a prosecutor and a detective interviewed him about an unrelated murder case in which he was an endorsed witness; and (2) the motion court clearly erred in denying his Rule 29.15 motion and finding that the state's conduct did not warrant a new trial because there was actual prejudice.

■ The granting of a mistrial is a drastic remedy and should only be exercised in extraordinary circumstances where the prejudice to the defendant cannot be removed in any other way. *State v. Danback,* 886 S.W.2d 204, 209[10, 11] (Mo.App.E.D.1994). Because the trial court is in a better position to evaluate the prejudicial effect, its decision not to grant a mistrial is granted enormous discretion. *Id.*

■ First, the Sixth Amendment right to counsel attaches when an adversarial judicial proceeding is commenced by, for example, a charge, preliminary hearing, indictment, or information. *State v. Parker,* 886 S.W.2d 908, 918[9–11] (Mo. banc 1994). The Sixth Amendment right is offense specific; it cannot be invoked for future prosecutions. *Id.* Here, appellant's Sixth Amendment right to counsel for the unrelated murder had not attached because no formal proceedings had been brought against him for that murder.

■ Appellant further contends that trial court erred in failing to grant a mistrial because the interview in the holdover cell intimidated him into remaining silent at his trial and "chilled" his right to testify in violation of the Fifth Amendment.

■ Appellant contends that in Missouri, a showing of prejudice is not required to sustain a Fifth and Sixth Amendment violation citing *State v. Boyd,* 560 S.W.2d 296, 298 (Mo.App.1977), and *State v. Burns* 322 S.W.2d 736, 742 (Mo.1959). These cases are distinguishable. They stand for the proposition that where a prosecutor has a conflict of interest due to a previous relationship with the defendant, there is no need to show actual knowledge of privileged information or "a more specific showing of prejudice." *Boyd,* 560 S.W.2d at 298. Here, the complaint of conduct is a prosecutor and police detective allegedly deterring a defendant from testifying in surrebuttal. In situations involving prosecutorial misconduct, the test is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips,* 455 U.S. 209, 220, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982).

Here, when appellant made his motion for mistrial, the trial court admonished the parties not to bring up the incident upon threat of mistrial. Further, at the close of the state's rebuttal, the trial court advised appellant of his right to testify to which appellant replied that he understood. Assuming appellant would have taken the stand in surrebuttal, he would only have been able to testify that he was dropped off at the location fifteen minutes away from the apartment. *See State v. Langston,* 889 S.W.2d 93, 97[12] (Mo.App.E.D.1994). Appellant has failed to show that his right to testify was interfered with. *See Smith,* 455 U.S. at 221, 102 S.Ct. at 948. We find no abuse of discretion and the trial court did not err in failing to declare a mistrial.

Second, appellant contends that the motion court clearly erred in denying his Rule 29.15 motion because there was no actual prejudice. As stated previously, appellant is required to show prejudice. The motion court found that, based upon the evidence, the interview did not affect appellant's decision on whether to testify. We agree. There-

fore, the motion court did not clearly err. Point denied.

■ In his third point, appellant contends that the trial court erred in admitting evidence that he possessed a gun two months prior to the charged offense because it constituted inadmissible evidence of "misconduct, bad acts, or other offenses" for which appellant was not on trial in that the evidence "improperly suggested to the jury that [appellant] was more likely to be guilty of shooting [victim]."

Prior to trial, the trial court denied appellant's motion in limine to exclude the complained of evidence. Over appellant's objection based upon relevance and prejudicial effect, the prosecutor elicited the following statements:

Q. Okay. Ms. Felix, within two months prior to this incident wherein [victim] was shot, did you see [appellant] with a handgun, a weapon?

A. Yes.

Q. Where did you see him with a weapon?

A. At my house.

.    .    .    .    .

Q. Okay. Was it a large weapon or a small one? Small gun or large gun?

[defense counsel]: I'm going to object, Your Honor, apparently that's relative to what—

THE COURT: Overruled.

A. Medium.

Q. Okay. Medium. Did it have flat sides or did it have a round side where the thing rotates?

A. Rotated.

Q. Okay. After you—did he show it to you?

A. He was putting it up.

Q. Putting it up. In a closet or something?

A. Yes something like that.

Q. Okay. Did he take it with him when he left?

A. Yes.

Q. Okay. You didn't keep it?

A. No.

■ Evidence of a defendant's uncharged prior criminal actions is not admissible unless it has a legitimate tendency to directly establish the defendant's guilt for the crime charged. *State v. Fox,* 882 S.W.2d 214, 218[7] (Mo.App.W.D.1994). The evidence must be relevant and its probative value must outweigh its prejudicial effect. *State v. Mallett,* 732 S.W.2d 527, 543 (Mo. banc 1987). The balancing of the effect and value of the evidence rests in the sound discretion of the trial court. *State v. Bernard,* 849 S.W.2d 10, 14 (Mo. banc 1993). There are numerous exceptions to the rule excluding evidence of uncharged crime, including its use to prove: (1) motive; (2) intent; (3) absence of mistake or accident; (4) common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; and (5) identity of the person charged with the commission of the crime on trial. *Bernard,* 849 S.W.2d at 13. These exceptions are not "all inclusive," and evidence of prior misconduct may be admissible even if it does not fit squarely into one of the exceptions.

■ The law is well settled that evidence is relevant when it shows that the accused owned, possessed or had access to tools, implements, or any articles with which a particular crime was or might have been committed, and that he owned or had such weapons in his possession prior to or shortly after the commission of the crime. *State v. Mills,* 671 S.W.2d 437, 439[3, 4] (Mo.App.1984).

The evidence of appellant's possession of a handgun within two months prior to the commission of the charged crime is relevant to show appellant's access to a gun in that it corroborates Mario Thompson's testimony

that appellant, using a small handgun, fired several shots into the apartment where victim was found shot, as well as the evidence that the bullets found at the crime scene and removed from victim's body were small caliber bullets.

■ Further, appellant contends that the incident in question was not close in time to the charged offense because it occurred some two months earlier. The remoteness of evidence goes to its weight and not to its admissibility and whether evidence should be excluded is largely within the trial court's discretion. *State v. Coleman,* 857 S.W.2d 363, 366[6–8] (Mo.App.E.D.1993); *see also State v. Taylor,* 506 S.W.2d 94, 95[1–3] (Mo. App.1974) (evidence of whether defendant ever owned a .22 caliber gun held to be material and not an abuse of discretion). We find no abuse of discretion here. Point denied.

In his fourth point, appellant contends that the motion court clearly erred in finding that defense counsel was not ineffective for failing to object to the prosecutor's improper argument because it suggested the jury should determine guilt based upon a desired punishment. Specifically, at the conclusion of the first portion of closing argument, the prosecutor stated:

> But the point of the matter is, the people bring their problem to you. They seek and we seek justice here. Justice here is that he has taken a young and energetic life that held promise. He could have gone wrong, [victim] could wind up in the Penitentiary or he could wind up a Rhodes Scholar, but he should have had the opportunity to do one or the other and he doesn't, he never will.

> For that the only appropriate punishment under the circumstances of this case and how he chose to kill him, he should get convicted of Murder First and pay for the life he took with his life in prison without parole.

■ In order to prevail on a claim of ineffective assistance of counsel, a movant must establish by a preponderance of the evidence that: (1) his attorney's performance was deficient in that he failed to exercise the ordinary skill and diligence that a reasonably competent attorney would exercise under similar circumstances; and (2) that his deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To satisfy the prejudice prong, the movant must show that there is a reasonable probability that, but-for the alleged errors of counsel, the result of the proceeding would have been different. *Id.*

■ First, appellant contends that this argument was improper because it suggested to the jury that it determine guilt, or the level of guilt, based upon a desired punishment. *See State v. Ware,* 793 S.W.2d 412, 414–415 (Mo.App.E.D.1990). In *Ware,* the prosecutor argued that the victim was entitled to her life and was not entitled to be hung from a mirror of a dump truck by the defendant. *Id.* at 414. The prosecutor further argued that defendant, having taken the life of the victim, was entitled to life in prison and that life in prison is the punishment for murder in the first degree. *Id.* This argument was improper because the defendant was a prior offender and the issue of punishment was removed from consideration by the jury. Here, punishment was not removed from consideration by the jury and was the subject of proper argument. *See State v. Mease,* 842 S.W.2d 98, 109 (Mo. banc 1992).

■ Next, appellant contends this argument was improper because the prosecutor invited the jury to compare the life of defendant with the life of victim, *citing State v. Storey,* 901 S.W.2d 886, 902[64] (Mo. banc 1995). In *Storey,* the prosecutor argued that the reason for the death penalty is that the right of the innocent people in the world outweighs the right of the guilty not to die. *Id.* The prosecutor further argued that "it comes down to one basic thing. Whose life is more important to you? Whose life has more value?" *Id.* The appellate court found the argument to be improper because the

death sentence cannot be simplified to "one basic thing" and instead involved numerous aggravating and mitigating circumstances. *Id.* Moreover, the court held that, even if it did constitute "one basic thing," it would not come down to whose life has more value. *Id.*

Here, the prosecutor did not compare the value of appellant's life with that of the victim. Rather, the prosecutor was merely expressing his opinion, fairly drawn from the evidence before the jury, that a certain punishment was proper. *See Mease,* 842 S.W.2d at 109[15].' This argument was permissible. Defense counsel cannot be found ineffective for failing to make a non-meritorious objection. *See Sidebottom v. State,* 781 S.W.2d 791, 799 (Mo. banc 1989). The motion court did not clearly err. Point denied.

In his final point, appellant contends that the motion court erred in finding that counsel was not ineffective for failing to object to the prosecutor's closing argument which diminished the jury's responsibility for its decision. Specifically, the prosecutor stated:

> It's tough to do that. It really is. It's tough to send this young man away for the rest of his life. But you know what? That's not a choice that you're really making. Really. You are not responsible for his conduct. Society in general is not responsible for his conduct.

> .    .    .    .    .

> He made his choice for punishment, he made his choice for conviction. You didn't. All you're doing now is confirming what actions he took. Finding the facts he created by doing them, and giving him the just punishment that the law requires.

In *State v. Harris,* 870 S.W.2d 798, 807[11] (Mo. banc 1994), our Supreme Court addressed whether these statements were improper: "You're aware that life or death is in each individual's hands" and "the jury determines whether defendant's actions warrant it. It's not that the jury gives the death

sentence." These statements were held proper because they were general statements regarding taking responsibility for one's actions. *Id.*

Likewise here, the prosecutor was making a general statement regarding taking responsibility for one's actions and therefore the argument was permissible. Accordingly, any objection by defense counsel would have been nonmeritorious. As stated previously, counsel cannot be held ineffective for failing to make a nonmeritorious objection. *See Sidebottom,* 781 S.W.2d at 799. Point denied.

JUDGMENTS AFFIRMED.

PUDLOWSKI and AHRENS, P.J., concur.