STATE of Missouri, Respondent,

v.

David WARE, Appellant.

No. 55116.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 5, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 11, 1990.

Application to Transfer Denied
Sept. 11, 1990.

The victim was a fourteen year old girl who had had sexual relations with defendant previously. Defendant, twenty-two, rode his bicycle to the victim's home. They visited amicably for several minutes and then began walking, with defendant pushing his bike. At some point during the walk the victim became angry over defendant's interest in another girl. She threatened defendant with falsely telling the other girl that she was pregnant by defendant. The couple began fighting. The victim's head struck something rendering her unconscious or partially conscious. Defendant forcibly removed portions of her clothing and had sexual intercourse with her. She revived and began fighting again. She was again rendered unconscious. Defendant noted that she was still breathing, took her body to a nearby truck, fastened a wire he found nearby to her neck and hanged her from the rear view mirror of the truck. Death occurred from strangulation. Her body was discovered shortly thereafter.

Police investigation commenced immediately. Police became aware that a bicycle had been seen in the neighborhood near the murder scene and that the bicycle had remained in the location for approximately an hour. A man, otherwise unidentifiable, retrieved the bicycle and rode away on it. This was in a time frame compatible with the murder. Police questioned the victim's sister and were advised that the victim had been talking to and walked away with a man named David. The sister directed police to Tina Davis, a friend of the victim. Tina pointed out defendant's home to the police. Police went to the house and were told that David Ware lived there but was not home. Police obtained a photograph of David Ware and confirmed with Tina that that was the David to whom she was referring. On the morning after the murder they returned to the house and knocked on every door but received no answer. They waited and in approximately thirty minutes defendant's grandmother arrived. It was her residence. No one else entered the premises during the time the police waited.

Henry B. Robertson, Ellen A. Blau, David C. Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., M. Melissa Manda, Asst. Atty. Gen., Jefferson City, for respondent.

SMITH, Judge.

Defendant appeals from his convictions of first degree murder and forcible rape. He was tried as a prior offender and the court sentenced him respectively to life imprisonment without probation or parole and life imprisonment, the sentences to be consecutive. We reverse and remand the murder conviction and affirm the rape conviction. Defendant has also appealed from the denial of his post-conviction Rule 29.15 motion. We dismiss that appeal as moot.

The grandmother let the police into the house and they talked with her for approximately thirty minutes inquiring about the whereabouts of David Ware. One of the police officers was standing between the living room and the bedroom of the house during this conversation. The officers heard a noise from the bedroom and defendant fell out of a metal closet in the bedroom onto the floor. He identified himself as David Ware and was immediately taken into custody and given *Miranda* warnings.

He consented to a search of his basement bedroom and unlocked the door for the officers. He was nervous and shaking. In the bedroom police found a bicycle and a shoe containing bloodstains. The blood was compatible with that of the victim and incompatible with that of defendant. Approximately 7% of the black population have compatible blood. The victim was black. Defendant was taken to police headquarters where he gave an oral confession, a tape recorded confession, and a videotaped confession, all basically consistent.

■■■ Defendant first challenges the refusal of the trial court to suppress the shoe found in his residence and the three confessions on the basis that they were the product of a warrantless arrest made without probable cause. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). A warrantless arrest is only valid if the police have probable cause to make the arrest. *State v. Olds,* 603 S.W.2d 501 (Mo. banc 1980) [1, 2]. "Probable cause" exists when facts and circumstances within the knowledge of the arresting officers, and of which they have reasonably trustworthy information, are sufficient to warrant belief by a person of reasonable caution that the person to be arrested has committed the crime for which he is being arrested. *Id.; State v. Sidebottom,* 753 S.W.2d 915 (Mo. banc 1988) [19, 20]. More than bare suspicion is required to support a finding of probable cause. *State v. Moore,* 659 S.W.2d 252 (Mo.App. 1983) [3, 4]. If there is sufficient evidence to support the trial court's finding we defer to that finding and ignore contrary evidence and inferences. *State v. Stokes,* 710 S.W.2d 424 (Mo.App.1986) [4].

■■ The evidence here was sufficient to support the trial court's finding. Defendant was seen in the company of the victim shortly before her murder in the vicinity of the murder. The victim's sister had seen defendant with his bicycle at the time and had been questioned by police before defendant's arrest. The witness who saw someone leave the area of the murder on a bicycle had also been questioned before defendant's arrest. The person last seen with the victim had been identified by the victim's sister as David, a friend of Tina, and Tina identified David Ware as her and the victim's mutual friend. It is a reasonable inference that defendant was inside the house when the police made their second visit to the home and that he was hiding from them. He remained in hiding while the police questioned his grandmother seeking to learn his whereabouts. He was in close proximity while that conversation occurred and it is reasonable to infer that he heard the conversation. He was taken into custody when he fell out of the metal closet and after he had identified himself as David Ware. Efforts by a suspect to evade the police may be considered as an incriminating circumstance. *State v. Jefferson,* 391 S.W.2d 885 (Mo.1965) [6, 7]; *State v. Johnson,* 670 S.W.2d 882 (Mo.App. 1984) [2]. We find the arrest was made with probable cause and the trial court did not err in refusing to suppress the evidence.

■■ Defendant's second point premises error upon the trial court's refusal to direct the jury to disregard a portion of the state's rebuttal argument.

The argument was:

"Now you know, [defense counsel] talked to you about what [the victim] was entitled to. [The victim] was entitled to her life. She wasn't entitled to by hung (sic) from a mirror of a dump truck. That man (indicating) is entitled to life in prison, that's what he is entitled to. It's more than [the victim] has to look forward to. That's what he should get.

That's what punishment for murder first degree is: life imprisonment."

Objection was made and sustained. Request was made that the court instruct the jury to disregard the statement and for a mistrial. The trial court, in the hearing of the jury, specifically refused to instruct the jury to disregard. We find that to be prejudicial error.

By the prosecutor's own determination to not seek the death penalty and to try defendant as a prior offender the issue of punishment was removed from consideration by the jury. The prosecutor's argument, made at a point when no response was possible, injected the punishment issue as a basis for the jury's determination of the degree of defendant's guilt. Punishment was totally irrelevant. Arguments which suggest that the jury determine guilt, or the level of guilt, on the basis of a desired punishment have been consistently treated as improper and prejudicial. *State v. Nickens*, 403 S.W.2d 582 (Mo. banc 1966) [9]; *State v. Johnson*, 267 S.W.2d 642 (Mo. 1954) [5].

The jury here was instructed on first degree murder, second degree felony murder, second degree murder, and manslaughter. The main evidence of defendant's guilt came from his confessions. The defense here was not based upon a claim of non-culpability in the death of the victim but upon the mental state of the defendant in committing the crime. The confessions furnished a basis for a finding of deliberation and therefore first degree murder but they also furnished a basis for a lesser level of culpability. In his confessions defendant talked about panicking after the act of intercourse and described at times a mental state less than that required for first degree murder. He also talked about his heavy drinking and drug abuse on the day of the murder.

The prosecutor's argument also failed to point out that life imprisonment is also a punishment for second degree murder. The thrust of the argument was to advise the jury that if it wanted: defendant to receive a life sentence it had to convict of first degree murder. Not only was the argument inaccurate but it called upon the jury to resolve whatever doubts it might have of the level of defendant's guilt on the basis of the punishment that might be imposed, an area specifically removed from this jury's determination.

The trial court sustained the objection but refused in front of the jury to order the statement to be disregarded. As such it left the matter for the jury's consideration. Instruction number two (MAI–CR 3d 302.-02) told the jury that as to objections to questions or exhibits offered the sustention of an objection should cause the jury to disregard the question or the exhibit. The instruction then states: "You will also disregard any answer or other matter which the Court directs you not to consider and anything which the Court orders stricken from the record." Implicit in that sentence is that if no instruction to disregard is given and the matter is not stricken the jury may consider the matter. No admonition nor striking was ordered here.

■ In determining whether improper argument was so clearly injurious that a new trial should be ordered, we must consider whether the trial court gave a cautionary instruction, whether the court gave a curative type instruction to disregard the improper comment, and the strengths of the state's case. *State v. Cannady*, 660 S.W.2d 33 (Mo.App.1983) [16, 17]. The court here gave neither a curative nor a cautionary instruction and the state's case on deliberation was not so strong that we can say the comment did not affect the result. The comment was improper and we cannot conclude it was non-prejudicial. Defendant is entitled to a new trial on the murder charge.

Defendant's third point involving alleged hearsay testimony by a police officer is without merit. Objection was sustained and the jury was instructed to disregard. The trial court's action cured the hearsay statement.

Defendant's claim of ineffective assistance of counsel relates solely to the murder charge and, in view of our reversal of that count, is moot.

Judgment on the rape count is affirmed; judgment on the murder first degree count is reversed and remanded for new trial.

SATZ, P.J., and GRIMM, J., concur.