Karen King Mitchell, Judge
Erick Beckett appeals, following a jury trial, his conviction for first-degree murder (§ 565.020)[1] and armed criminal action (§ 571.015), for which he was sentenced to concurrent terms of life without the possibility of parole and thirty years' imprisonment. Beckett raises one claim on appeal; he argues that the trial court abused its discretion in precluding defense counsel from questioning the venire panel to discern whether they could consider all the evidence once they heard that "two shots" were fired. Because the trial court did not abuse its discretion, we affirm.
Background[2]
On February 23, 2013, Beckett called 911 to report that he had shot his wife (Victim) a couple of times. Police responding to the call found Victim lying on the bed in the master bedroom with her head in a pool of blood. The police also found a Smith and Wesson handgun (containing a live cartridge) and two more cartridges (one live and one spent) on the bed near Victim's head. Emergency response personnel initiated life-saving procedures at the scene, but Victim was pronounced dead shortly after arriving at the hospital.
Beckett was indicted on two charges-murder in the first degree (Count 1) and armed criminal action (Count 2). During voir dire , the following exchange occurred:
*883 [DEFENSE COUNSEL]: You are going to hear that there were two shots in this case, and I have got to know right now if that fact, that fact alone does it for you?
[PROSECUTOR]: Your Honor, can we approach?
THE COURT: Sure.
(The following proceedings were had at the Bench.)
[PROSECUTOR]: We're getting into what the evidence is going to show. The same reason he wanted to cut me off. I'm making the exact same objection is to him giving the two shots. We're not going to get into trigger pull since we're going to have somebody talk about that.[3 ] We're going to have somebody talk about one or two shots, he doesn't need to talk about that.
[DEFENSE COUNSEL]: Judge, I am not arguing evidence, I am making sure that these jurors will look at all the evidence and consider it all. That is an operative fact in this case, and if they are not going to listen to anything else, I am entitled to know it. I am not going beyond anything else. You know well enough if somebody starts talking about-or asking me questions, I am going to tell them that's it.
THE COURT: Here's the problem I'm seeing. Is that going to be the evidence in the case?
[DEFENSE COUNSEL]: There are two shots.
[PROSECUTOR]: Yes.
THE COURT: So what is the point of the question that you are asking I guess?
[DEFENSE COUNSEL]: The point is that they are going to listen to all the evidence as it comes in and not make their mind up based on that fact alone, and that is it.
THE COURT: You are not asking them that. You are asking if there are two shots, is that enough to convict him?
[DEFENSE COUNSEL]: No. I just went through out there that they have to wait until the end of all the evidence and consider all of the evidence. My question to them is if you hear evidence that there's two shots, is that all? Is that it? Do you not need to hear anymore?
[PROSECUTOR]: That is critical in this case.
THE COURT: That's what my concern is. [Defense Counsel], I chastised the prosecution for and so fair is fair. I have asked them never to do what they did to me the last trial we had which is getting commitments from jurors. What we are here to do is to determine whether they can be fair and can listen to all the evidence. If you ask that question I've got no problem, but you're asking them to parse out individual pieces of evidence which is exactly why you got a mistrial the last time, and [the Prosecutor] was the one standing there right next to you.
[DEFENSE COUNSEL]: That is not what I am doing here, Judge, I am asking them if they will follow the instructions.
THE COURT: Sustained. You ask questions of what their biases are. That's what this voir dire part is about, it's not to take certain pieces of evidence.
*884 [DEFENSE COUNSEL]: So you are excluding me from talking about anything that may be part of my defense?
THE COURT: No, I didn't say that.
[DEFENSE COUNSEL]: Or that they would even be open to my defense?
THE COURT: [Defense Counsel], I did not say that. This is why we have gone down this path of bad voir dire here recently is because everybody is wanting to argue their case in front of the jury panel and not the jury. So what I am telling you is I'm sustaining your objection and we're not to ask the question about certain pieces of evidence. You have to ask some questions about their ability to follow the instructions and their biases here.
[DEFENSE COUNSEL]: And that is what I am asking them, Judge.
THE COURT: You did not ask that question. You asked a particular piece of evidence, if that is enough to convict. You are trying to get them to commit.
[DEFENSE COUNSEL]: No, no, no. I didn't ask that question.
THE COURT: Then ask the question properly.
(The proceedings returned to open court.)
[DEFENSE COUNSEL]: We have discussed the fact that the Judge will instruct you that you are to consider all of the evidence in the case, correct? Is that right?
So if you hear evidence that there were two shots in this case, will you still be able to do that? Will you still be able to wait until the very end-
[PROSECUTOR]: Your Honor, can we approach again?
THE COURT: Sure.
(The following proceedings were had at the Bench.)
[PROSECUTOR]: He's asking for a commitment-
THE COURT: Here's what we're going to do. Everybody, please you all are doing it and I know why you are all doing it. We have already been through this once before in a previous case with regard to asking questions about if they can follow the instructions, can they wait to make a decision. Why do you keep injecting that two shots were fired? That's what I am trying to figure out.
[DEFENSE COUNSEL]: Because that's a huge-
[PROSECUTOR]: Gun violence is the issue. Gun shooting and gun violence are the issues, the theme. It's not the specifics of the one or two or three or four, five shots.
[DEFENSE COUNSEL]: That's your theme, that's not mine. My theme is that there is one big fact in this case and they are going to have to keep their minds open throughout the entire case.
[PROSECUTOR]: Ask that question.
THE COURT: If you ask that question you're not going to have any problem. You are prefacing everything based upon the two shots being fired as opposed to what you just said-
[DEFENSE COUNSEL]: So I will say it just like that.
[PROSECUTOR]: If you get out there and you start with there is one big fact right on the [heels] of just mentioning the two shots, the inference will be in the juror's mind that the two shots is the critical issue. I think we have kind of spoiled this issue with the mention of two shots, then go straight into the big fact-
[DEFENSE COUNSEL]: I will ask a question in between.
THE COURT: Okay, here we go.
*885 (The proceedings returned to open court.)
[DEFENSE COUNSEL]: So you are not going to make up your mind until you get back in that room and you talk about it, right? That's the Court's instruction, right? You are to consider everything prior to making up your mind and you are going to go back there and you are going to talk it out with your other jurors. Anybody going to have a problem with that, waiting to get there?
(No response.)
At trial, Beckett testified that he routinely carried his handgun with him around the house and that the gun was always within his or Victim's reach. In the early morning hours of February 23, 2013, after a conflict with Victim that ended in their bedroom, Beckett went to clear and secure the handgun, which Victim had dropped on the bed, but when Beckett jerked the gun off the bed, it fired in his hand. He grabbed the handgun again, and it kicked and fired again. Beckett called 911 and stayed with Victim until the police arrived and Beckett was taken into custody. He testified that he did not mean to shoot Victim and that it was an accident.
The medical examiner who performed the autopsy on Victim testified at Beckett's trial on behalf of the State. The medical examiner found two gunshot entrance wounds-one on Victim's right forehead and the other on the left side of her neck-and one exit wound on her back from the bullet that entered her neck. Both shots were fired from fewer than three feet away from Victim. The shot to Victim's forehead caused extensive damage to her brain and was fatal. The medical examiner declared the cause of death to be multiple gunshot wounds and the manner of death to be homicide. He testified that, in cases involving accidental shootings, there is usually a single gunshot wound ; after performing more than 4,000 autopsies, he could not recall ever "call[ing] a multiple gunshot wound an accidental matter."
A firearm forensic expert, called to testify by the State, said she tested the handgun involved in the shooting and determined that it was functioning properly. She indicated that the gun was equipped with both a trigger safety to prevent the gun from firing accidentally and a firing pin safety. She also testified that, during testing, the gun fired only once per trigger squeeze, and the trigger pull, i.e. , the pounds of pressure needed to move the trigger rearward, was eleven pounds. She concluded that, even if picked up by the trigger, the gun would not fire accidentally because the heavy trigger pull acted as a third safety feature.
In addition to eliciting evidence throughout the trial about the two shots, the State emphasized the issue during its closing argument. The prosecutor argued that the fact that Victim was shot twice proved the shooting was intentional. He said, "[t]he truth is two shots equals homicide. Now, two shots is important here. Two shots."
With respect to Count 1 of the indictment, the jury received instructions on crimes ranging from murder in the first degree to involuntary manslaughter in the second degree. The jury found Beckett guilty of first-degree murder and armed criminal action. Beckett filed a timely Motion for Judgment of Acquittal Notwithstanding the Verdict of the Jury or, in the Alternative, for a New Trial, in which he argued that the trial court erred when it sustained the State's objections to defense counsel asking venire panel members whether they could consider all the evidence once they learned that two shots were fired. The trial court denied the motion and sentenced Beckett to concurrent terms of life without parole and thirty years' imprisonment. This appeals follows.
*886 Standard of Review
The trial court "is generally vested with wide discretion in the conduct of voir dire [,]" and, thus, has "discretion to judge the appropriateness of specific questions[.]" State v. Oates , 12 S.W.3d 307, 310 (Mo. banc 2000). "Rulings [on voir dire ] by the trial court are reviewed only for an abuse of discretion." Id. at 311. "An appellate court will find reversible error only where an abuse of discretion is found and the defendant can demonstrate prejudice." Id. "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." State v. Johnson , 207 S.W.3d 24, 40 (Mo. banc 2006).
Analysis
In his sole claim on appeal, Beckett argues that the trial court abused its discretion in sustaining the prosecution's objection to defense counsel's voir dire questioning as improperly seeking a commitment. We disagree.
A defendant is entitled to a fair and impartial jury. U.S. Const. amends. VI, XIV ; Mo. Const. art. I, sec. 18(a). "A necessary component of a guarantee for an impartial jury is an adequate voir dire that identifies unqualified jurors." Oates , 12 S.W.3d at 310. "The judge is in the best position to determine 'whether a disclosure of facts on voir dire sufficiently [en]sures ... an impartial jury without at the same time amounting to a prejudicial presentation of the evidence.' " Id. at 310-11 (quoting State v. Leisure , 749 S.W.2d 366, 373 (Mo. banc 1988) ).
As mere general fairness questions are rarely sufficient to shed light on possible preconceived prejudices, it is important to permit a defendant to reveal critical facts in order to protect his right to search the venire panel for possible prejudice or bias. However, not every fact should be disclosed to the venire. Only critical facts, those facts with a substantial potential for disqualifying bias, need be revealed.
Id. at 311.
"The purpose of exposing prospective jurors to critical facts ... is to discover bias, not to create bias; questions may not be phrased ... to elicit a commitment from jurors on how they would react to hypothetical facts or seek to predispose jurors to react a certain way to anticipated evidence." State v. Whitt , 461 S.W.3d 32, 39 (Mo. App. E.D. 2015). "When the inquiry includes questions phrased or framed in such manner that they require the one answering to speculate on his own reaction to such an extent that he tends to feel obligated to react in that manner, prejudice can be created." State v. Clark , 981 S.W.2d 143, 146-47 (Mo. banc 1998) (quoting State v. Garrett , 627 S.W.2d 635, 642 (Mo. banc 1982) ).
Beckett contends that the fact that two shots were fired is a critical one that should have been submitted to the venire panel. Beckett relies primarily on Clark for support regarding what constitutes a critical fact. Clark involved two murders-one of the victims was a three-year-old child. Id. at 145. Before voir dire , the State filed a motion in limine, asking the trial court to prohibit the defense from "seeking a commitment" from the venire by informing them of isolated circumstances involving the case, specifically the age of the young victim. Id. The court sustained the motion, ruling that the defendant was "not entitled to voir dire on specifics of the case being tried." Id. On appeal, the Missouri Supreme Court determined that the victim's age created substantial potential for disqualifying bias and should have been disclosed to the venire panel in the search for bias and partiality.
*887 Id. at 148. The Court held that the trial court's prohibition of all inquiry on that fact constituted an abuse of discretion.[4] Id. See also State v. Ousley , 419 S.W.3d 65, 74-75 (Mo. banc 2013) (holding that the appellant should have been allowed to question the venire about possible bias regarding consensual sexual activity between teenagers where consent was presented as a defense to the charge of forcible rape and some potential jurors may have had strongly held personal beliefs about such activity); State v. Finch , 746 S.W.2d 607, 613 (Mo. App. W.D. 1988) (holding that "defense counsel was entitled to learn if any of the prospective jurors had a predisposition to accept as true the testimony of alleged rape victims generally").
The facts of the present case are distinguishable from Clark and more closely resemble those at issue in Oates . In Oates , the Court found no error in the trial court's refusal to allow questions asking the venire panel members whether they could consider the defendant's self-defense claim if the evidence showed the victim had been shot in the back of the head. Oates , 12 S.W.3d at 311-12. In distinguishing its earlier ruling in Clark , the Court in Oates explained,
[t]he critical fact in Clark involved the brutal murder of a very young child. There exists a prevalent perception among society that the killing of an innocent child is never justified, regardless of any extenuating circumstances. It is by virtue of this common perception that the circumstances of the murder in Clark constitute a critical fact that necessitates allowing the defense to probe the venire panel during voir dire. In contrast, being shot in the back of the head, while certainly a difficult fact for the defense to refute, does not rise to the level of a critical fact.
Id. at 311. The Court in Oates also noted, "While the circumstances surrounding this case pose substantial obstacles to the defense, the obstacles do not stem from any preconceived bias among the venire." Id. at 312. "Should this Court determine that the[se] circumstances ... constitute a critical fact, then nearly any fact that strongly weighs against a defendant would pass muster." Id.
Here, the fact that two shots were fired was not a fact that, in and of itself, had any potential for disqualifying bias. Unlike the age of a young murder victim, the fact that two shots were fired, while undercutting Beckett's defense of accident, was not a fact that would tend to engender prejudice for or against Beckett. See State v. Delancy , 258 S.W.3d 110, 114 (Mo. App. E.D. 2008) (distinguishing cases like Clark and Finch where the victims belonged to particular groups of people who may engender bias for or against defendants). Furthermore, Beckett presented evidence to support his defense that the shooting was accidental. Had the jury believed that evidence, they could have determined that Beckett was not guilty of first-degree murder, despite two shots being fired, but the jury did not believe that evidence.
Defense counsel asked, "You are going to hear that there were two shots in this case, and I have got to know right now if that fact, that fact alone does it for you?" After the State objected and the court sustained the objection, defense counsel tried again, asking, "So if you hear evidence that there were two shots in this case, will you still be able to do that? Will you still be able to wait until the very end?" The phrasing of these questions reveals *888 that they were "an attempt to elicit a commitment from jurors as to how they were going to react to the evidence and [the] defense theory at trial." Whitt , 461 S.W.3d at 39. The aim of these questions was to get a commitment from the venire panel as to its willingness to accept Beckett's defense. Defense counsel's questions "were not designed to uncover bias, but rather were argumentative in that they were intended to inject [his] argument into the voir dire examination." Id. "Argument during voir dire is inappropriate." State v. Scott , 298 S.W.3d 913, 916 (Mo. App. E.D. 2009). Because defense counsel's questions were not designed to seek information about a critical fact but, instead, were intended to precondition the jury to the defense theory, the trial court did not abuse its discretion in curtailing the questioning. Having found no abuse of discretion, we need not consider the issue of prejudice. Point denied.
Conclusion
The trial court did not abuse its discretion in sustaining the prosecution's objection to defense counsel's voir dire questioning of the venire panel members about their ability to consider all the evidence once they heard that two shots were fired. Its judgment is affirmed.
Thomas H. Newton, Presiding Judge, and Victor C. Howard, Judge, concur.

All statutory citations are to the Revised Statutes of Missouri, as updated through the 2013 Cumulative Supplement, unless otherwise noted.

The facts are viewed in the light most favorable to the verdict. State v. Shegog , 521 S.W.3d 628, 631 n.1 (Mo. App. W.D. 2017).

During voir dire , the State asked about "trigger pull," and defense counsel objected because it was evidence and should not be the subject of voir dire. The court sustained the objection.

The Court also found that the appellant in Clark had suffered a "real probability of injury" as a result of the trial court's restriction on voir dire. State v. Clark , 981 S.W.2d 143, 148 (Mo. banc 1998).