

# In the Missouri Court of Appeals
# Eastern District

**DIVISION FOUR**

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED106193 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Monroe County |
| vs. | ) | |
| | ) | Honorable David C. Mobley |
| CARL E. EMERSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 2, 2019 |

## Introduction

Carl E. Emerson ("Emerson") appeals from the trial court's judgment after a jury convicted him of second-degree assault, first-degree assault, and armed criminal action. Alleging four points of error, Emerson contends the trial court abused its discretion in (1) overruling Emerson's objection to the State's voir dire question on whether the use of a racial epithet justifies violence; (2) denying Emerson's request for a writ of body attachment; (3) refusing Emerson's proffered verdict directors; and (4) overruling Emerson's objection to the State's reference in closing argument that the lesser-included offense of third-degree assault is a misdemeanor. Because the State's inquiry in voir dire was relevant to revealing potentially disqualifying biases in the venire panel, we find no error in the trial court's handling of voir dire. Because Emerson did not effect valid service on the witness, the trial court lacked the authority to issue a writ of body attachment. Further, the trial court committed no prejudicial instructional

error because the evidence and instructions at trial clearly show the verdict directors contravened the alibi instruction and did not impair Emerson's alibi defense. Lastly, the record demonstrates Emerson was not prejudiced by the State's errant but isolated and fleeting reference to sentencing classifications. Accordingly, because we find no abuses of the trial court's discretion, we affirm the judgment of the trial court.

Factual and Procedural History

On the evening of March 27, 2016, Emerson was at the home of an acquaintance ("Witness") and overheard Victim using the N-word while telling a story about a relative who was a member of a white supremacist gang. Emerson confronted Victim about the use of the racial epithet and proceeded to punch and kick him. Emerson retrieved a pistol, loaded bullets, and shot Victim, injuring him. Emerson threatened to shoot everyone present, saying he was not going to leave any witnesses. Emerson shot and injured two other individuals before fleeing the scene. The police pursued Emerson and arrested him after a brief standoff.

The State charged Emerson with first-degree assault and armed criminal action for each of the three shooting victims. The six charges were consolidated, and the case proceeded to a jury trial. During voir dire, the State asked the venire panel: "You're going to hear evidence of a story that was being told that involves the use of the N-word. Everybody knows what I mean. Does anyone here think that that justifies shooting somebody?" Emerson objected on the basis that the question called for a legal conclusion and sought commitment from the jury. The trial court overruled the objection. The State inquired whether the venire panel understood the question and noted that no venirepersons raised their hands.

During the trial, one of the shooting victims testified about sending Facebook messages to a person identified as T.W. The victim identified T.W.'s Facebook name and profile picture, but denied sending Facebook messages to T.W. stating that someone else, not Emerson, was the

2

shooter. Emerson subpoenaed T.W. to appear as a witness at trial to authenticate the Facebook messages. Emerson served T.W. the subpoena by having the subpoena read aloud to her over the phone. After T.W. failed to appear in court, Emerson requested a writ of body attachment to compel her appearance. Following an offer of proof by Emerson, the trial court denied the request to issue a writ of body attachment, determining both that T.W.'s testimony would not lay a foundation for the Facebook messages and that Emerson did not effect valid service of the subpoena upon T.W.

The State's evidence of the timeline of the offenses included testimony from the victims that Emerson was at Witness's home when they arrived between 10 p.m. and midnight. Around 1:00 a.m., the police received a report of shots fired. Emerson presented an alibi defense through testimony from Cory Culp ("Culp). Emerson's alibi was that he could not have committed the shootings at Witness's home because Emerson was at his grandmother's home at the time of the shootings. In support of Emerson's alibi, Culp testified that around 8:00 p.m., he and Emerson were at Centerville Apartments, where Emerson talked with Witness. Culp and Emerson left Centerville Apartments at about 9:30 p.m. and drove around town. Culp then drove Emerson at 11:30 p.m. to Emerson's grandmother's home at the Mark Twain Senior Apartments, where Emerson stayed the entire night.

At the jury instruction conference, Emerson objected to the verdict directors proffered by the State on the basis that the instructions did not track verbatim the date, time, and place set forth in the alibi instruction pursuant to the Notes on Use for Missouri Approved Instructions– Criminal ("MAI-CR") 4th 408.04. The alibi instruction stated:

3

One of the issues in this case is whether the defendant was present at 1021 Fulton Avenue, Hannibal, Missouri between 11:30 o'clock p.m.[1] on March 27, 2016 and 2:30 o'clock a.m. on March 28, 2016. On that issue, you are instructed as follows:

1. The state has the burden of proving beyond a reasonable doubt that the defendant was present at the time and place the offense is alleged to have been committed.

2. If the evidence in this case leaves in your mind a reasonable doubt that the defendant was present at 1021 Fulton Avenue, Hannibal, Missouri between 11:00 o'clock p.m. on March 27, 2016 and 2:30 o'clock a.m. on March 28, 2016, then you must find the defendant not guilty.

The verdict directors for the assault charges, including the lesser-included charges, and armed criminal action charges instructed the jury to find Emerson guilty if it found that Emerson committed the charged conduct "on or about March 28, 2016 in the City of Hannibal, Township of Mason, County of Marion, State of Missouri[.]" The trial court overruled Emerson's objection and refused Emerson's proffered verdict directors tracking the precise date, time, and place of the alibi instruction.

The trial court proceeded to read the instructions to the jury. The trial court instructed the jury that the attorneys' closing arguments are intended to help in understanding the evidence and applying the law, but are not evidence. The trial court also instructed the jury not to single out certain instructions and disregard others.

In its closing argument, the State argued that the jury should convict Emerson of first-degree assault rather than either of the lesser-included offenses of assault in the second or third degree. The State reasoned the evidence supported finding Emerson acted with the mental state required for first-degree assault as opposed to third-degree assault, stating:

STATE:      Now so far as assault in the third degree . . .
            . . . .
            So how can you say it was just reckless?

---

[1] Emerson's submitted alibi instruction refers to both 11:00 p.m. and 11:30 p.m. in describing the range for the time of the offenses. Emerson does not put this negligible time difference at issue on appeal.

> How can you not say that it was not knowingly when he intentionally said—think of the words that were said. "Heart still beating?" You know. "This is for cops." You know. "You're going to get it." You know.
> Those are intentional words. That ups the level of seriousness to assault in the first degree. That's a misdemeanor. Are you telling me that what—

DEFENSE:     Judge, may we approach?

Emerson objected to the State informing the jury that third-degree assault was a misdemeanor because the statement improperly referred to sentencing matters. The trial court overruled Emerson's objection.

The jury convicted Emerson of two counts of assault in the second degree, one count of assault in the first degree, and one count of armed criminal action. The sentencing court sentenced Emerson to a total of thirty-nine years in prison. Emerson now appeals.

## Points on Appeal

Emerson raises four points on appeal, each alleging the trial court abused its discretion. In Point One, Emerson contends the trial court erred in allowing, over Emerson's objection, the State's voir dire question of whether use of the N-word justifies shooting someone. Emerson suggests the question was argumentative and intended to make prospective jurors commit themselves to a certain view of the evidence, which prejudiced Emerson by impacting the jury's view of the evidence. In Point Two, Emerson maintains the trial court erred in refusing to issue a writ of body attachment because Emerson laid a proper foundation and summoned the witness in compliance with Missouri service requirements which permit reading the subpoena aloud. Emerson contends he was prejudiced by this error because the witness would have authenticated the exculpatory Facebook messages. In Point Three, Emerson argues the trial court erred in failing to include the date, time, and place language of the alibi instruction in the verdict directing instructions as required by MAI-CR 408.04 Notes on Use. Emerson submits this error

5

undermined the jury's fair consideration of his alibi defense. In Point Four, Emerson claims the trial court erred in overruling his objection to the State's closing argument characterizing third-degree assault as a misdemeanor because that statement improperly submitted the issue of punishment, which prejudiced Emerson by creating a reasonable likelihood that the jury did not fully consider the lesser-included offense of third-degree assault.

Standard of Review

We review each point of error in this appeal to determine if the trial court abused its discretion. See State v. Reyes, 108 S.W.3d 161, 165, 168 (Mo. App. W.D. 2003) (reviewing a trial court's rulings on objections during voir dire and closing argument); State v. Moore, 359 S.W.3d 520, 523 (Mo. App. E.D. 2012) (reviewing the denial of a writ of body attachment); State v. Casey, 517 S.W.3d 570, 574 (Mo. App. E.D. 2016) (reviewing instructional error). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." State v. Beckett, 540 S.W.3d 881, 886 (Mo. App. W.D. 2018) (citing State v. Johnson, 207 S.W.3d 24, 40 (Mo. banc 2006)). To be granted relief on appeal under the abuse of discretion standard, the defendant must show he was prejudiced by the trial court's error "to the extent that there is a reasonable probability that the outcome at trial would have been different had the error not been committed." State v. Tramble, 383 S.W.3d 34, 37 (Mo. App. E.D. 2012) (citing State v. Deck, 303 S.W.3d 537, 540 (Mo. banc 2010)). We defer to the trial court's findings of fact and credibility. State v. Snider, 535 S.W.3d 382, 387 (Mo. App. E.D. 2017). We review questions of law de novo. Id.

Discussion

## I.      Point One—Voir Dire Questioning

Emerson's first point challenges the trial court's ruling in voir dire by permitting the State to ask the venire panel the following: "You're going to hear evidence of a story that was being told that involves the use of the N-word.  Everybody knows what I mean.  Does anyone here think that that justifies shooting somebody?"  Emerson objected to this inquiry, preserving his claim of error for appellate review.  Emerson asserts prejudicial error because the question was argumentative and intended to make potential jurors speculate about the evidence and commit themselves to a certain view of the evidence.

The trial court is best positioned to determine whether a disclosure of facts during voir dire sufficiently protects the defendant's right to an impartial jury without prejudicially trying the case on voir dire through presentation of the facts in explicit detail.  Beckett, 540 S.W.3d at 886 (citing State v. Oates, 12 S.W.3d 307, 310–11 (Mo. banc 2000)); Reyes, 108 S.W.3d at 165–66.  We will not gainsay the trial court's ruling on the appropriateness of a voir dire question unless it was so "clearly against the logic of the circumstances" that it "shock[s] the sense of justice and indicate[s] a lack of careful consideration."  Beckett, 540 S.W.3d at 886.  Further, "a liberal attitude is allowed in the examination of jurors, as long as the scope of voir dire remains commensurate with its purpose to discover bias or prejudice in order to select a fair and impartial jury."  State v. Ousley, 419 S.W.3d 65, 73 (Mo. banc 2013) (internal citation omitted).  During voir dire, counsel may expose the venire panel to critical facts "with substantial potential for disqualifying bias."  Id.  However,

> the purpose of exposing prospective jurors to critical facts of the case is to discover bias, not to create bias.  Questions may not be phrased in such a way as to attempt to elicit a commitment from jurors how they would react to hypothetical facts or seek to predispose jurors to react a certain way to anticipated evidence.

Id. (internal quotation omitted). Accordingly, "counsel may not extract a commitment from a venireperson to a particular course of action." State v. Delancy, 258 S.W.3d 110, 114 (Mo. App. E.D. 2008) (internal quotation omitted); but see Ousley, 419 S.W.3d at 74 (internal quotation omitted) ("[N]ot every question that asks whether a venireperson would 'automatically' reach a conclusion seeks an improper commitment.").

Here, the State asked whether use of the N-word justifies shooting someone. Without question, the State's comment introduced a critical fact in the case to the venire panel—the Victim's use of a racial epithet. However, given the latitude extended to voir dire questioning, and the trial court's discretion in controlling the jury selection process, we are not persuaded the trial court abused its discretion in allowing the State's question.[2] See Ousley, 419 S.W.3d at 73; Beckett, 540 S.W.3d at 886.

The State's question permissibly explores potentially disqualifying biases in the venire panel, as "[c]ounsel may probe the venire [panel] for preconceived prejudices which would prevent the jurors from following the [trial] court's instructions." State v. Crawford, 904 S.W.2d 402, 408 (Mo. App. E.D. 1995). Indeed, we have upheld a voir dire question as not improperly seeking commitment when the State is "merely attempting to elicit any potential sympathies the juror may have for [a] defendant . . . [because] [a]ny positive response might bear upon the juror's ability to follow the trial court's instructions." Id.; see also State v. Bullock, 179 S.W.3d 413, 416–17 (Mo. App. S.D. 2005) (finding no abuse of discretion where the trial court allowed counsel to inquire during voir dire whether "anyone believe[s] it's okay for an adult to have sexual relations or sexual intercourse with a person who's less than [twelve] years old?"); State

---

[2] Our holding does not sanction the use of a racial epithet in a question that is "particularly harmful and inflammatory" as well as unnecessary when the question could have been adequately posed without it. See State v. Wiley, 337 S.W.3d 41, 46, 47 n.11 (Mo. App. S.D. 2011) (asking whether words or insults could justify use of physical force against another person).

v. Neal, 591 S.W.2d 178, 181–82 (Mo. App. E.D. 1979) (finding no abuse of discretion where the trial court allowed a voir dire question whether evidence that the victim had been previously assaulted by the defendant meant "the person would have the right to kill the other person"). In Crawford, where the defendant's chain was stolen by the victim, the State asked prospective jurors whether anyone believed that if a person steals something he should be put to death. 904 S.W.2d at 408. There, we found no abuse of discretion when the trial court overruled the defendant's objection, because the question inquired into the critical facts of what instigated the defendant's actions. Id. Here, the same analysis supports the trial court's decision to allow the State to inquire into the critical facts of what instigated Emerson's actions.

Furthermore, we are not induced to find that the State's question was intended to precondition the jury. See Beckett, 540 S.W.3d at 888 (finding a voir dire question improperly seeks a commitment when it is "not designed to seek information about a critical fact but, instead, [is] intended to precondition the jury to [counsel's] theory"); see also State v. Robinson, 831 S.W.2d 667, 669–70 (holding the trial court did not abuse its discretion by sustaining an objection to and clarifying a question asking the venire panel whether women ever deserve a black eye). In Beckett, the Western District determined defense counsel improperly sought a commitment from the venire panel by asking: "You are going to hear that there were two shots in this case, and I have got to know right now if that fact, that fact alone does it for you?" Beckett, 540 S.W.3d at 887–88. The Western District reasoned that "the fact that two shots were fired was not a fact that, in and of itself, had any potential for disqualifying bias." Id. at 887. Rather, the question solicited a commitment from the venire panel whether the defendant could be convicted solely on the basis of the defendant having fired two shots, thereby preconditioning the venire panel to the defendant's theory of the case. Id. at 888. We find the present case is

9

distinguishable from Beckett because here the State inquired into a critical fact—the Victim's use of a racial epithet—which had potential to reveal a disqualifying bias that would cause a juror to render a verdict contrary to the law. See Beckett, 540 S.W.3d at 886 (citing Oates, 12 S.W.3d at 310–11); Ousley, 419 S.W.3d 65, 73–75 (holding counsel should have been allowed to ask whether anyone on the venire panel would automatically believe that sex between two teenage persons was not consensual, because a personal belief that a teenager could never consent to sexual activity was contrary to the law to be applied in the case); see also State v. Mosely, 534 S.W.3d 879, 885 (Mo. App. W.D. 2017) (citing State v. Wiley, 337 S.W.3d 41, 46 (Mo. App. S.D. 2011)) (explaining that Wiley affirmed striking a venireperson for his response to the question "whether words or insults could justify use of physical force against another" because "his opinion that words about race would justify violence [was] contrary to the law that would be instructed in that case."). We find that the State's question about whether a racial epithet justifies violence permissibly probed into biases and prejudices that could prevent the prospective jurors from following the applicable law and instructions of the trial court. See Crawford, 904 S.W.2d at 408; Ousley, 419 S.W.3d at 74.

Having found the trial court did not abuse its discretion in overruling Emerson's objection, we need not consider the issue of prejudice. Becket, 540 S.W.3d at 888. Point One is denied.

## II.     Point Two—Writ of Body Attachment

Emerson next contests the trial court's denial of his request for the trial court to issue a writ of body attachment to compel the attendance of a witness. At issue here is whether Emerson properly served the witness by having the subpoena read aloud to the witness—a method that

10

complies with the service requirements of Section 491.120[3], but not with Rule 26.02.[4] Because Rule 26.02 governs, the trial court did not err in refusing to issue the writ because the witness was never properly served.

When a subpoenaed witness fails to appear, the party who served the subpoena may request the court issue a writ of body attachment to compel the witness's attendance. Section 491.150; Smith v. Dir. of Revenue, 410 S.W.3d 703, 705 (Mo. App. E.D. 2013). A trial court may issue a writ of attachment when the party seeking the witness's attendance has both "duly summoned" the witness and shown that the "absent witness is material, and that [the defendant] cannot safely go to trial without [the witness's] testimony." Section 491.160. Importantly, "a trial court may not issue a writ of body attachment until the witness has failed to obey a validly executed subpoena, which requires evidence that the witness was properly served." Smith, 410 S.W.3d at 705 (citing Moore, 259 S.W.3d at 523). A trial court does not abuse its discretion by declining to issue a writ of attachment for a witness who has not been properly served. Id.

In a criminal case, proper service of a subpoena requires delivering a copy of the subpoena to the witness. Rule 26.02(d); Moore, 359 S.W.3d at 523. The record shows that Emerson did not deliver a copy of the subpoena to T.W. Thus, Emerson did not comply with Rule 26.02(d). Emerson counters that reading the subpoena to T.W. complied with Section 491.120, the general provision for serving subpoenas. Section 491.120 provides that "[t]he service of a subpoena to testify shall be **by reading the same or delivering a copy** thereof to the person to be summoned[.]" Section 491.120 (emphasis added). Emerson maintains that the more permissive Section 491.120 controls. We disagree.

---

[3] All statutory references are to RSMo (2016), unless otherwise indicated.
[4] All Rule references are to Mo. R. Crim. P. (2016), unless otherwise indicated.

The Supreme Court of Missouri promulgated rules to effectuate the authority vested in the Court by the Missouri Constitution. State ex rel. Collector of Winchester v. Jamison, 357 S.W.3d 589, 592 (Mo. banc 2012).[5] The Rules of Criminal Procedure "are promulgated pursuant to authority granted this Court by Section 5 of Article V of the constitution of Missouri and supersede all statutes and court rules inconsistent therewith." Rule 19.02.[6] Thus, "if there is a conflict between [the Supreme] Court's rules and a statute, the rule always prevails if it addresses practice, procedure or pleadings." State v. Johnstone, 486 S.W.3d 424, 432 (Mo. App. W.D. 2016) (quoting State ex rel. Union Elec. Co. v. Barnes, 893 S.W.2d 804, 805 (Mo. banc 1995)). Service of process is a procedural matter. Scheidegger, 451 S.W.2d at 137–38.

Any inconsistency between Section 491.120 and Rule 26.02 resolves in favor of Rule 26.02. Rule 19.02; Johnstone, 486 S.W.3d at 432. Because Emerson did not properly serve the absent witness under the requirements of Rule 26.02(d), the trial court lacked authority to issue a writ of body attachment and, as a result, properly denied Emerson's request. Point Two is denied.

## III.   Point Three—Alibi Instruction Tracking in Verdict Directors

### A.   Briefing Requirements for Instructional Error under Rule 84.04(e)

Before addressing the substance of Emerson's claim under Point Three, we consider the preliminary matter of the State's challenge to Emerson's compliance with appellate briefing requirements for jury instructions. Rule 84.04(e)[7] provides that when a point on appeal "relates to the giving, refusal, or modification of an instruction, such instruction shall be set forth in full

---

[5] Rules on procedural service requirements are not substantive in that such rules do not create, define, or regulate rights and thus do not violate the separation of powers. See Elliott v. Elliott, 612 S.W.2d 889, 892 (Mo. App. S.D. 1981) (citing Scheidegger v. Greene, 451 S.W.2d 135, 137–38 (Mo. 1970)) (noting service of process is procedural, not substantive).

[6] Relatedly, the General Assembly has the power to annul or amend procedural rules under article V, section 5 of the Missouri Constitution. Jamison, 357 S.W.3d at 592–93.

[7] All references to Rule 84.04 are to Mo. R. Civ. P. (2016).

in the argument portion of the brief." Rule 84.04(e); see also Marmaduke v. CBL & Assocs. Mgmt., Inc., 521 S.W.3d 257, 275 (Mo. App. E.D. 2017). Rule 84.04(e) was created "to enable the court to determine whether the instruction involved was in proper form and correctly stated the law." State v. Wells, 586 S.W.2d 354, 358 (Mo. App. E.D. 1979). Consequently, "[a]n appellant who asserts instructional error but does not set forth the instruction in question in the argument portion of his or her brief[] fails to preserve the issue for appeal." Sheehan v. Nw. Mut. Life Ins. Co., 103 S.W.3d 121, 132 (Mo. App. E.D. 2002). However, if the absence of the instruction does not prevent us from conducting a sufficient legal analysis, we may exercise our discretion to review the merits of the argument. Marmaduke, 521 S.W.3d at 275; Burbridge v. Union Pac. R. Co., 413 S.W.3d 649, 653 n.3 (Mo. App. E.D. 2013).

Emerson's allegation of instructional error does not comply with the strict requirements of Rule 84.04(e) because he neither appends the refused verdict directors to the record nor includes them in full in the argument section of his brief. Rule 84.04(e); Marmaduke, 521 S.W.3d at 275. However, we note that in the argument portion of his brief, Emerson offers the contested portion of the refused verdict directors, as well as the relevant portion of the alibi instruction. Despite Emerson's failure to strictly adhere to Rule 84.04(e), the truncated instructions offered in his argument provide us sufficient information to determine whether the proffered instructions correctly stated the law. We review the claim on its merits ex gratia. Marmaduke, 521 S.W.3d at 275; Burbridge, 413 S.W.3d at 653 n.3.

B.    Alibi and Verdict Director Instructions

Emerson contends the trial court erred by refusing to give his proposed verdict directors which precisely tracked the date, time, and place language from the alibi instruction. In particular, Emerson's alibi instruction provided that: "One of the issues in this case is whether the defendant was present at 1021 Fulton Avenue, Hannibal, Missouri between 11:30 o'clock

13

p.m. on March 27, 2016 and 2:30 o'clock a.m. on March 28, 2016." The verdict directors stated the offenses occurred "on or about March 28, 2016 in the City of Hannibal, Township of Mason, County of Marion, State of Missouri[.]" Emerson alleges the discrepancy between date, time, and place in the alibi and verdict director instructions violated the MAI-CR 408.08.4 Notes on Use and caused the jury to not fairly consider his alibi defense.

To prevail, Emerson must first show the verdict directors violated the Notes on Use. Rule 28.02(f); State v. Daly, 798 S.W.2d 725, 728 (Mo. App. W.D. 1990). If the verdict directors violated the Notes on Use, the resulting error's prejudicial effect is to be judicially determined. Rule 28.02(f). The error raises a presumption of prejudice that is rebutted if the facts and instructions together clearly show no prejudice exists. State v. Starr, 998 S.W.2d 61, 65 (Mo. App. W.D. 1999). In the context of alibi instructions, prejudice from an instructional error is rebutted when the error is clearly shown not to impair a defendant's alibi defense. Daly, 798 S.W.2d at 729 (citing State v. Graves, 588 S.W.2d 495, 498 (Mo. banc 1979)).

MAI-CR 408.04 Notes on Use provide guidance on conforming a verdict director to an alibi instruction. Specifically, "[w]here the evidence is sufficient to support the giving of an alibi instruction, the date, time, and place must be stated with sufficient detail in the verdict directing instruction to contravene the alibi evidence." MAI-CR 404.04.4 Notes on Use. Importantly, neither MAI-CR 408.04 Notes on Use nor its referenced MAI-CR 404.02 Notes On Use demand that the verdict director track the date, time, and place language in the alibi instruction verbatim. See State v. Meyers, 770 S.W.2d 312, 316 (Mo. App. W.D. 1989); But cf. State v. Leisure, 810 S.W.2d 560, 574 (Mo. App. E.D. 1991) (observing the date and time in the verdict director should mirror the date and time in the alibi instruction). Here, we recognize that "on or about March 28, 2016 in the City of Hannibal" is significantly less detailed than "at 1021 Fulton

14

Avenue, Hannibal, Missouri between 11:30 o'clock p.m. on March 27, 2016 and 2:30 o'clock a.m. on March 28, 2016." However, even if the trial court erred in refusing Emerson's proposed verdict directors, we are satisfied that the verdict directors and evidence in the record clearly rebut any presumption of prejudice because the verdict directors given by the trial court did not impair Emerson's alibi defense. See Starr, 998 S.W.2d at 65; Daly, 798 S.W.2d at 729.

Missouri courts have held that an instructional error impairs a defendant's alibi defense only when the instruction allows the jury to believe simultaneously both the State's evidence and the defendant's alibi evidence. State v. Roden, 674 S.W.2d 50, 57 (Mo. App. W.D. 1984); Daly, 798 S.W.2d at 729 (citing Graves, 598 S.W.2d at 498) (noting an error does not prejudicially impair the defendant's alibi when the evidence clearly contrasts the alibi and the alleged offense). This rule stems from the notion that an alibi defense aims to contravene the State's claim that the defendant was present at the time and place of the offense, and thus a successful alibi defense creates reasonable doubt concerning the defendant's presence at the time and place of the offense. State v. York, 931 S.W.2d 185, 188–89 (Mo. App. S.D. 1996).

Here, the evidence for the alibi and the alleged offenses sufficiently contravene one another such that the jury could not believe Emerson's alibi and simultaneously believe that Emerson committed the shootings. Roden, 674 S.W.2d at 57; Daly, 798 S.W.2d at 729. The trial court read Emerson's requested alibi instruction, which instructed the jury to find Emerson not guilty if the evidence in the case created a reasonable doubt that Emerson was at the scene of the crime "between 11:30 o'clock p.m. on March 27, 2016 and 2:30 o'clock a.m. on March 28, 2016." Emerson's alibi evidence consisted of testimony from Culp, who stated that around 9:30 p.m., he and Emerson left Centerville Apartments. At 11:30 p.m., Culp brought Emerson to Emerson's grandmother's apartment, where Emerson remained overnight. Emerson's evidence

15

supporting his alibi instruction focused on the fact that he was at his grandmother's home—and not at Witness's home, the scene of the crime—uninterrupted from 11:30 p.m. until the following morning.[8] The State's evidence at trial was that Emerson was at Witness's home when the victims arrived between 10:00 p.m. and midnight, Emerson shot the three victims, and the police received a call at approximately 1:00 a.m. reporting shots fired. Viewing the instructions as a whole and the evidence adduced at trial, the jury could not have concluded both that Emerson committed the shootings at Witness's home *and* that Emerson was with Culp and then at his grandmother's home the entire night. See Roden, 674 S.W.2d at 57. The clear conflict between the alibi and the defense ensures the jury was not confused or misled when considering the two divergent explanations of Emerson's location at the time of the shootings. See Daly, 798 S.W.2d at 728–29. Accordingly, the verdict directors did not nullify Emerson's alibi defense. See id. Because any presumption of prejudice arising from instructional error here did not impair Emerson's alibi offense, we hold the trial court did not abuse its discretion in rejecting Emerson's proffered verdict directors. See id. (citing Graves, 588 S.W.2d at 498); Roden, 674 S.W.2d at 57. Point Three is denied.

## IV.     Point Four—Closing Argument Misstatement

In Point Four, Emerson maintains the trial court abused its discretion in overruling his objection to the State's comment during closing argument that third-degree assault is classified as a misdemeanor. Emerson challenges the remark as improper because it informed the jury of sentencing matters not in evidence or before the jury. Further, Emerson argues the remark

---

[8] We note that the trial court acknowledged it was giving Emerson the benefit of the alibi instruction despite Culp's testimony accounting for Emerson's whereabouts only until 11:30 p.m. and estimating that Emerson's grandmother's home was within walking distance of Witness's home.

prejudiced him by causing the jury to not fully consider convicting Emerson on the lesser-included offense of third-degree assault.

While the State has wide latitude in drawing inferences from the record when presenting its closing argument, the arguments must be fairly drawn from the evidence. State v. Miller, 226 S.W.3d 262, 268 (Mo. App. S.D. 2007) (citing State v. Forrest, 183 S.W.3d 218, 228 (Mo. banc 2006)); see also State v. McFadden, 369 S.W.3d 727, 748 (Mo. banc 2012). The State's closing argument during the guilt-phase of a trial may not discuss matters not in evidence, including sentencing. State v. Ware, 793 S.W.2d 412, 415 (Mo. App. E.D. 1990). "Arguments which suggest that the jury determine guilt, or the level of guilt, on the basis of a desired punishment have been consistently treated as improper[.]" Id. In Ware, the State argued the following: "That man (indicating) is entitled to life in prison, that's what he is entitled to. It's more than [the victim] has to look forward to. That's what he should get. That's what punishment for murder first degree is: life imprisonment." Id. at 414–15. There, we held the State's argument was improper because the State injected punishment as the basis the jury should use to determine the defendant's guilt. Id. Here, the State classified the lesser-included offense of third-degree assault as a misdemeanor when highlighting why the jury should convict Emerson of first-degree, and not third-degree, assault. The comment may have dissuaded the jury from even considering third-degree assault because a lay person generally understands that the punishment for misdemeanors is substantially less than that for felonies. The classification of offenses directs a jury's attention to sentencing matters not properly before it in the guilt-phase of a defendant's trial. See id.; State v. Weimer, 658 S.W.2d 77, 79 (Mo. App. E.D. 1983) (noting the issue of punishment is not integral to a jury's determination of guilt or innocence). Without

17

question, the State's reference to third-degree assault's misdemeanor classification was improper. See Ware, 793 S.W.2d at 415. Such comments generally should not be countenanced.

However, though the State's misdemeanor comment was improper, we are not convinced that Emerson was prejudiced by the comment. See Tramble, 383 S.W.3d at 37 (citing Deck, 303 S.W.3d at 540) (noting that in order to obtain a reversal, a defendant must show a reasonable probability that the outcome at trial would have been different absent the trial court's error in overruling an objection to closing argument). We will not find prejudice and reverse a trial court's ruling on an errant statement in closing argument that is fleeting, unrepeated, and part of an otherwise appropriate argument. See State v. Storey, 40 S.W.3d 898, 911 (Mo. banc 2001). The record clearly confirms that the State's reference to a misdemeanor was made within the context of a larger and otherwise appropriate argument that the evidence presented at trial supported a conviction of first-degree assault rather than assault in the second or third degree. See McFadden, 369 S.W.3d at 747, 749 (finding the State permissibly stated that a verdict of second-degree murder would be a "victory" for the defendant when arguing that the evidence supported only a verdict of first-degree murder). Critically, we find the State's single mention of the misdemeanor classification of third-degree assault was isolated, fleeting, and had no demonstrable impact on the jury's deliberations. See Storey, 40 S.W.3d at 911–12.

Moreover, we presume that the jury follows the directions of the trial court and that the trial court is in the best position to determine the effect of an improper remark. McFadden, 369 S.W.3d at 752; State v. Davis, 122 S.W.3d 690, 693 (Mo. App. E.D. 2003) (finding no abuse of discretion where the trial court's instructions cured any ill effects of an improper closing argument remark). Here, the trial court instructed the jury immediately preceding closing arguments that the attorneys' arguments are not evidence but rather are intended to help in

18

understanding the evidence and applying the law. See <u>Davis</u>, 122 S.W.3d at 693. The trial court additionally instructed the jury not to single out certain instructions and disregard others. See <u>id.</u> Given the superior position of the trial court in ascertaining the effect of an improper remark and our presumption that the jury follows the trial court's instructions, we are not persuaded that the jury disregarded the instructions and failed to fully consider the lesser-included offense of third-degree assault due to the State's stray misdemeanor remark. See <u>McFadden</u>, 369 S.W.3d at 749, 752; <u>Davis</u>, 122 S.W.3d at 693. Point Four is denied.

Conclusion

The judgment of the trial court is affirmed.

_Kurt S. Odenwald_

KURT S. ODENWALD, Presiding Judge

Gary M. Gaertner, Jr., J., concurs.
Colleen Dolan, J., concurs.