

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112468 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | Cause No. 22SL-CR06483-01 |
| | ) | |
| TODD M. WILBERT, | ) | Honorable Dean P. Waldemer |
| | ) | |
| Appellant. | ) | Filed: May 20, 2025 |

### Introduction

Todd Wilbert ("Defendant") appeals the circuit court's judgment after a jury found him guilty of first-degree murder, armed criminal action, and trespass. Defendant raises two points on appeal. In Point I, Defendant argues the circuit court plainly erred in allowing the State to comment on his potential punishments during its closing argument because he had a right to have the jury decide his guilt based only on facts relevant to his guilt and not any punishment. In Point II, Defendant argues the circuit court abused its discretion in allowing the State to elicit evidence about Elizabeth Gill's ("Victim's") demeanor, character, and familial relationships because the evidence was not logically and legally relevant to his offenses. Because there was overwhelming evidence of Defendant's guilt, he cannot prove he was prejudiced by the State's improper closing argument comments or the evidence about Victim's demeanor, character, and familial

relationships to demonstrate he is entitled to relief under this Court's plain error analysis. Points I and II are denied. The circuit court's judgment is affirmed.

## Factual and Procedural History

Because Defendant does not challenge the sufficiency of the evidence to support his convictions, the facts viewed in the light most favorable to the judgment are:

Defendant had a wholesale linen business for 25 years. Defendant and Victim briefly dated before she began working for him to repay money he loaned her. The parties continued to work together for ten years, but frequently argued about money or business. Defendant characterized their relationship as "financially married" and explained Victim "came in and saved [his] ass" when she opened her own wholesale linen company while his business declined during the Covid-19 pandemic.

On August 13, 2022, the day of Victim's murder, Defendant began "blowing [Victim's] phone up all day" by sending her text messages.[1] At approximately 10:00 a.m. Defendant texted, "Help me please. Need a 100.00. Money is tied up again." Two hours later, Defendant texted, "Please call me when you have a moment." Twenty-eight minutes later, Defendant texted, "Funny.. You have been making me think about the rules of in between." Defendant texted Victim again at 3:19 p.m., "Where you at? Want me to stop by and talk about it." Thirty minutes later, Victim responded, "Sorry … out for the day. First chance to read texts." Defendant responded at 5:08 p.m., "OkY. Need to do the fleamarket tomorrow. Need to pay for little stuf NOW[.]" An hour later, Defendant texted, "I want to ase. home now Gotta pay me. You owe help me PLEASE NOW I'm trapped." At 6:12 p.m., Defendant called Victim, but she did not answer. Two minutes later Defendant texted, "This is a great way to make a man go wierd."

---

[1] The spelling, punctuation, and syntax are quoted directly from the messages.

At 6:44 p.m., Defendant texted Victim a picture of a stuffed animal belonging to her which indicated Defendant was at her home and on her back patio, but it was unclear whether that text message was delivered. Before sending this text, Defendant had parked down the street from Victim's house so she would not see his car when she returned. He entered her garage to get a bottle of wine and started drinking the wine on her patio. Defendant called Victim again at 7:35 p.m., but she did not answer. At 8:06 p.m., Defendant sent Victim a picture of the stuffed animal and a bottle of wine from her patio, and stated, "Time to pay me. I have no other choice[.]" Ten minutes later, Defendant texted, "What are doing. Everhing… I have is with you[.]"

Victim had been out with her daughter, Grace Gill ("Daughter"), and other family members during the day. While she was out she had a couple of glasses of wine. After 8:00 p.m., Victim returned home. Defendant said Victim asked why he was at her home. He followed Victim into her house to confront her because she did not return his text messages. Victim called 911. The 911 recording captured Victim and Defendant arguing about her not responding to his text messages and calls. Victim told Defendant, "Out. Out." Victim then told the dispatcher, "He's got a fucking gun pointed at me." The 911 recording captured a gunshot, some commotion, and a second gunshot. Daughter arrived home shortly thereafter and found Victim on the kitchen floor, bleeding profusely, and struggling to breathe. Victim died at the scene.

Three hours later, police found Defendant passed out near an air conditioning unit in Victim's next-door neighbor's yard. Defendant was wearing a gun holster. A gun and cellular phone were seized near his body. When the police arrested Defendant, he appeared to be intoxicated because his speech was slurred and he staggered. The next day, police questioned Defendant when he was no longer intoxicated. Defendant did not discuss the shooting itself, but explained he sat on Victim's patio for several hours drinking before she returned home. Defendant

3

said Victim was surprised to see him, and they argued. Defendant was charged with first-degree murder, armed criminal action, first-degree burglary, and unlawful use of a weapon while intoxicated.[2]

The 911 call, the text messages, and portions of Defendant's interview were played for the jury. The medical examiner testified Victim's cause of death was from gunshot wounds to the neck and back. The medical examiner stated although he could not discern which gunshot was fired first, either gunshot would have been fatal on its own. A crime laboratory detective testified the bullets recovered from Victim's body were consistent with being fired from the gun recovered near Defendant when he was arrested. Defendant waived jury sentencing at the close of the State's evidence and presented no evidence in his defense.

The jury returned guilty verdicts for first-degree murder, armed criminal action, and trespass. The circuit court sentenced Defendant to a term of life imprisonment without parole for first-degree murder, fifteen years' imprisonment for armed criminal action, and six months' imprisonment for trespass, with all sentences ordered to run consecutively. Defendant filed a motion for new trial which was overruled.

This appeal follows. Additional facts will be adduced in this Court's analysis to avoid repetition.

### Discussion

*Point I: Improper Closing Argument*
*Party Positions*

In Point I, Defendant argues the circuit court plainly erred in allowing the State to comment on his potential punishments during its closing argument. Defendant claims the State's reference to the different sentencing ranges for first-degree and second-degree murder resulted in manifest

---

[2] The State dismissed the unlawful use of a weapon charge before trial.

injustice because it impugned his statutory right to a bifurcated trial. Defendant also argues he had a right to have the jury decide his guilt based only on facts relevant to his guilt and not the range of punishment.[3] The State argues the circuit court did not err in failing to intervene *sua sponte* during its closing argument because the references were made in the context of discussing deliberation as an element of first-degree murder and the strength of that evidence. The State further argues Defendant suffered no prejudice because there was overwhelming evidence of his guilt.

*Standard of Review*

Defendant concedes his claim is not preserved for appeal because defense counsel did not object to the State's closing argument and did not raise a claim regarding improper closing argument in his motion for new trial. *See State v. Foster*, 674 S.W.3d 119, 123 (Mo. App. E.D. 2023). Hence, this Court may only review this claim for plain error. *State v. Boyd*, 659 S.W.3d 914, 926 (Mo. banc 2023); Rule 30.20. Plain error review is a two-step process. First, this Court must determine whether the circuit court's error was facially "evident, obvious, and clear." *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019) (quoting *State v. Jones*, 427 S.W.3d 191, 195 (Mo. banc 2014)). Second, if the appellant "establishes a facially 'evident, obvious, and clear' error, then this Court will consider whether the error resulted in a manifest injustice or miscarriage of justice." *Id.*

*Analysis*

"It has long been held that '[p]lain error relief as to closing argument should rarely be granted and is generally denied without explanation.'" *Foster*, 674 S.W.3d at 123–24 (quoting

---

[3] "Multiple claims of error in one point relied on renders the point multifarious and as such is a violation of Rule 84.04, made applicable to briefs in criminal appeals by Rule 30.06(c)." *State v. Dodd*, 637 S.W.3d 659, 666 (Mo. App. W.D. 2021) (quoting *State v. Leonard*, 490 S.W.3d 730, 736 (Mo. App. W.D. 2016)).

*State v. Hall*, 319 S.W.3d 519, 523 (Mo. App. S.D. 2010)).  Reversal due to plain error during closing argument "is warranted only if the defendant shows the improper argument 'had a decisive effect on the jury's determination.'"  *Wood*, 580 S.W.3d at 579 (quoting *State v. McFadden*, 369 S.W.3d 727, 747 (Mo. banc 2012)).  "The entire record is considered when interpreting a closing argument, not an isolated segment."  *Id*. (internal citation omitted).

Defendant challenges two statements the State made during its initial closing argument and two statements made during the rebuttal closing, to which defense counsel raised no objection.  When discussing the evidence of deliberation to support a first-degree murder conviction, the State argued:

> Cool reflection, any amount of time, no matter how brief, the difference between murder in the first degree and murder in the second degree.  *The difference between life without the possibility of parole, and life in prison and the chance to see the light of day outside.*  There's a reason why.  Because the law allows a difference.  If you have even the briefest second where you could stop, make a choice, but then you still proceed.  But this isn't a case of deliberation for mere seconds, let's be clear.

(Emphasis added).  At the conclusion of the initial closing argument, the State argued, "[D]efendant is guilty of murder in the first degree, armed criminal action, and burglary in the first degree.  Evidence has proven that beyond a reasonable doubt.  *He belongs in prison for the rest of his life*."  (Emphasis added).

During the rebuttal closing argument, the State reiterated Victim was on the ground, gasping, and Defendant shot her again in the back, which the State argued supported deliberation:

> It's what this evidence proves beyond a reasonable doubt.  This is not a difficult decision for you to make.  It's not even your decision to make.  Let's be clear about that.  [D]efendant made the decision.  The evidence has been presented to you.  [D]efendant has put himself in this position by his actions.  Not [Victim].  Not [Daughter] … or anyone else.  *You're not the one to put the defendant away for the rest of his life, he is*.

6

Don't make this a difficult thing to do. Focus on the evidence. Not the sympathy. Have no sympathy for [D]efendant. Focus on what the evidence tells you. What the elements of these crimes tell you. What this evidence proves beyond a reasonable doubt. I don't envy you. I don't envy you for having to hear this evidence, to see this evidence, to go back to your jury assembly room and talk about this evidence. I don't envy you. I don't envy you to have to say, *by signing that line, that the defendant is a murderer in the first degree and that he will go to prison for the rest of his life.* I don't envy you. That is your duty. That is what this evidence has proven beyond a reasonable doubt.

(Emphasis added).

Defendant argues these statements impugned his right to a bifurcated trial under section 557.036.2, which directs a trial to proceed in two stages when an offense is submitted to the jury.[4] During "the first stage, the jury shall decide only whether the defendant is guilty or not guilty of any submitted offense. The issue of punishment shall not be submitted to the jury at the first stage." *Id*. Defendant contends because the language prohibiting punishment evidence during the first stage of trial is mandatory, the circuit court's error in allowing the State to present this argument was evident, obvious, and clear and resulted in a manifest injustice. Defendant cites no case in which an appellate court has reversed a circuit court's judgment for violating this statutory provision due to the State's improper closing argument remarks.

Defendant also argues his due process rights were violated when the State expressly told the jury to consider his potential punishment while determining his guilt because these comments may have influenced the jury's determination of whether to convict him of first-degree murder, a lesser-included offense, or to acquit him. "While the [S]tate has wide latitude in closing arguments, [they] must not go beyond the evidence presented, and courts should exclude 'statements that misrepresent the evidence or the law, introduce irrelevant prejudicial matters, or otherwise tend to confuse the jury.'" *State v. Walter*, 479 S.W.3d 118, 125 (Mo. banc 2016)

---

[4] All statutory references are to RSMo 2016.

7

(quoting *State v. Deck*, 303 S.W.3d 527, 543 (Mo. banc 2010)). "The State's closing argument during the guilt-phase of a trial may not discuss matters not in evidence, including sentencing." *State v. Emerson*, 573 S.W.3d 93, 105 (Mo. App. E.D. 2019). "Arguments which suggest that the jury determine guilt, or the level of guilt, on the basis of a desired punishment have been consistently treated as improper[.]" *Id*. (quoting *State v. Ware*, 793 S.W.2d 412, 415 (Mo. App. E.D. 1990)). Further, "[t]he classification of offenses directs a jury's attention to sentencing matters not properly before it in the guilt-phase of a defendant's trial." *Id*.

In *Emerson*, "the State classified the lesser-included offense of third-degree assault as a misdemeanor when highlighting why the jury should convict him of first-degree, and not third-degree, assault." *Id*. When analyzing this preserved error for an abuse of discretion, this Court found "[t]he comment may have dissuaded the jury from even considering third-degree assault because a lay person generally understands that the punishment for misdemeanors is substantially less than that for felonies." *Id*. Although the State's comment was improper, this Court found the defendant was not prejudiced because the comment "was isolated, fleeting, and had no demonstrable impact on the jury's deliberations." *Id*. at 106. This Court further found no prejudice resulted because we must presume the jury followed the circuit court's instructions, and the circuit court was in the best position to determine the effect of the improper remark. *Id*.

In *Ware*, the State commented during its rebuttal argument that the defendant was "entitled to life in prison, that's what he's entitled to. It's more than [the victim] has to look forward to. That's what he should get. That's what punishment for murder first degree is: life imprisonment." *Ware*, 793 S.W.2d at 414–15. The defendant's objection to this argument was sustained, but his request for a curative instruction was specifically refused within the jury's hearing. *Id*. at 415. This Court found this was prejudicial error because: (1) "[p]unishment was totally irrelevant" to

determining the defendant's guilt; (2) the State's argument was inaccurate in the context of differentiating punishment for first- and second-degree murder; (3) the circuit court's refusal to give a curative instruction left the matter for the jury's consideration; and (4) the State's evidence "on deliberation was not so strong that we can say the comment did not affect the trial." *Id.*

As this Court held in *Emerson* and *Ware*, we find the State's references to Defendant's potential punishment were improper, and "[s]uch comments generally should not be countenanced." *Emerson*, 573 S.W.3d at 105. The State's references were neither isolated nor fleeting, as in *Emerson*, because they were repeated four times: twice during the State's closing argument and twice during rebuttal argument.

Yet, unlike in *Emerson* or *Ware*, Defendant offered no objection to these comments. "Plain error relief is rarely granted for a closing argument claim because withholding an objection to an improper argument is often a strategic decision made by counsel." *State v. Johnson,* 284 S.W.3d 561, 573 (Mo. banc 2009). Defendant did not seek nor was he denied any curative relief, further distinguishing his case from the reversible error found in *Ware*. Finally, unlike in *Ware*, this Court finds the State presented overwhelming evidence of Defendant's guilt, specifically that he deliberated when he murdered Victim.

Section 565.002(5) defines "deliberation" as "cool reflection for any length of time no matter how brief." "Deliberation is not a question of time—an instant is sufficient—and the reference to 'cool reflection' does not require that the defendant be detached or disinterested. Instead, the element of deliberation serves to ensure that the jury believes the defendant acted deliberately, consciously and not reflexively." *State v. Nathan*, 404 S.W.3d 253, 266 (Mo. banc 2013). "The element of deliberation may be proven by the circumstances surrounding the crime."

*Wood*, 580 S.W.3d at 575. "This Court … must view the evidence in the light most favorable to the jury's finding of guilt." *Nathan*, 404 S.W.3d at 264.

"Deliberation can be inferred from evidence of planning[,]" *State v. Bowman*, 663 S.W.3d 916, 924 (Mo. App. W.D. 2023), and when a deadly weapon is brought to the commission of a crime. *State v. Bateman*, 318 S.W.3d 681, 688 (Mo. banc 2010). When Victim did not respond to Defendant's nine text messages or two phone calls as he anticipated, he drove to her home, armed with a gun later connected to the bullets recovered from her body. He parked down the street from her house so she would not see his vehicle when she returned home. Defendant waited several hours for Victim to return home so he could confront her. Defendant followed Victim into her home, and they argued about her not returning his texts or calls. The jury could have reasonably inferred the argument escalated to the point Victim felt she needed police assistance because she called 911. While Victim was speaking to the 911 dispatcher, she told Defendant, "Out. Out." and then yelled, "He's got a fucking gun pointed at me." Instead of leaving as Victim directed, the 911 recording captured Defendant's initial gunshot, followed by some commotion, and his second gunshot. "'Deliberation may be inferred from multiple wounds,' especially when there is a break between injury-causing incidents." *State v. Vickers*, 560 S.W.3d 3, 22 (Mo. App. W.D. 2018) (quoting *State v. Stacy*, 913 S.W.2d 384, 386 (Mo. App. W.D. 1996)) (finding evidence of deliberation when the defendant "shot the victim seven times, and there was apparently a brief pause in the middle of those shots"). "[D]eliberation 'can [also] be inferred from the use of a deadly weapon on some vital part of the victim's body.'" *State v. Sokolic*, 660 S.W.3d 54, 58 (Mo. App. E.D. 2023) (quoting *State v. Mills*, 623 S.W.3d 717, 725 (Mo. App. E.D. 2021)). The medical examiner testified Victim sustained gunshot wounds to her neck and back. Although he could not discern which gunshot was fired first, he testified either gunshot would have been fatal.

10

Finally, "[d]eliberation may also be inferred when the defendant has shot the victim multiple times or when the defendant leaves the scene immediately after the shooting without checking on the victim or procuring aid." *State v. Brock*, 699 S.W.3d 778, 780 (Mo. App. E.D. 2024) (quoting *State v. Samuels*, 965 S.W.2d 913, 922–23 (Mo. App. W.D. 1998)). Defendant fled the scene without providing aid to Victim despite knowing she was seriously injured, as Daughter testified she found Victim in a pool of blood and struggling to breathe.

Given this evidence, this Court finds Defendant suffered no prejudice from the State's improper closing argument comments because there was overwhelming evidence of Defendant's guilt regarding deliberation. The circuit court did not plainly err in failing to *sua sponte* intervene during the State's closing argument because Defendant did not prove both error and prejudice. Point I is denied.

*Point II: Improper Character Evidence*
*Party Positions*

In Point II, Defendant argues the circuit court abused its discretion in allowing the State to elicit evidence about Victim's character and relationship with her family because the evidence was logically and legally irrelevant to his offenses. Defendant argues Daughter's testimony inflamed the jury's passion and prejudice against him when his mental state was central to determining his guilt or innocence. The State contends this point is not preserved for appeal. The State further argues this evidence was relevant to explain Victim's demeanor at the time of the crime, and Defendant cannot demonstrate manifest injustice given the overwhelming evidence of his guilt.

*Standard of Review*

Initially, this Court must determine whether Defendant preserved this point to apply the appropriate standard of review. *Interest of K.C.B.*, 689 S.W.3d 759, 762 (Mo. App. S.D. 2024). "The general rule for the preservation of error is an objection stating specific grounds must be

11

made at trial, the same grounds must be set out in the motion for new trial, and these grounds must be renewed in the appellate brief." *State v. Young*, 603 S.W.3d 305, 313 (Mo. App. E.D. 2020). While Defendant raised this claim in his motion for new trial and on appeal, the trial transcript reflects Daughter testified, without objection, to every comment Defendant cites in his brief as intending to inflame the jury's passion and prejudices and garner sympathy for Victim and her family. Because Defendant did not object at trial to this testimony, this Court finds Defendant did not preserve this point for appeal. *Id*.

Defendant requests, in the alternative, should this Court find his claim is not preserved for appeal this Court conduct plain error review, which we perform *ex gratia*. As stated previously, Defendant must first demonstrate admitting Daughter's testimony was "facially 'evident, obvious, and clear'" error, and if established, that "the error resulted in manifest injustice or a miscarriage of justice." *Wood*, 580 S.W.3d at 579.

*Analysis*

The circuit court retains "broad discretion to admit or exclude evidence during a criminal trial …." *State v. Emery*, 701 S.W.3d 585, 600 (Mo. banc 2024) (quoting *Wood*, 580 S.W.3d at 574). To be admissible, "evidence must be both logically and legally relevant." *Id*. (quoting *State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2002)). "Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence[.]" *Id*. (quoting *State v. Mathews*, 33 S.W.3d 658, 661 (Mo. App. S.D. 2000)). Evidence is also logically relevant "if it tends to corroborate evidence which itself is relevant and bears on the principal issue of the case." *Id.* "Legal relevance weighs the probative value of the evidence against its costs – unfair prejudice, confusion of the

issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.* (quoting *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002)).

"Even such an error, alone, will not justify reversal." *Id.* "This Court will reverse the [circuit] court's decision only if there is a reasonable probability that the error affected the outcome of the trial or deprived the defendant of a fair trial." *Wood*, 580 S.W.3d at 574. Further, "[r]eversal of a [circuit] court's decision is not required when the overwhelming evidence of a defendant's guilt overcomes any presumption of prejudice from the allegedly erroneous admission of evidence." *State v. Gates*, 683 S.W.3d 726, 734 (Mo. App. E.D. 2024).

> The prosecutor asked Daughter to tell the jury who Elizabeth Gill was. Daughter testified:
>
> [Victim] is my mother. Um, her and I were very, very close. It was just me and her in the house. I was the last one. And was also my best friend. Like, we did everything together. Um, and she was one of the most loving and caring, and she had such a big heart for everyone in her life. Everyone, you know, no exceptions. So she was an amazing person and a very kind person.

The prosecutor displayed two pictures of Victim as she looked before her murder and asked Daughter if the picture represented how Daughter remembered her. Daughter replied, "Very much so, yes." The prosecutor asked her to explain her answer. Daughter testified, "Always smiling. Very happy. Beautiful mother, yes." Daughter then testified about Victim's personal and business relationship with Defendant. Daughter also testified she and Victim were out listening to music on the day Victim was murdered. Daughter stated Victim started drinking at 6:00 p.m. and had a couple of glasses of wine. The prosecutor asked Daughter to describe Victim's demeanor after having a couple of glasses of wine. Daughter stated, "Very happy. Very giggly. Very loving. She loved to be, you know, hugs, kisses, all of that." Defense counsel did not object to this testimony.

Defendant argues it was evident, obvious, and clear Daughter's testimony about Victim's general demeanor, character, and their relationship was not logically or legally relevant to any

material fact regarding her murder. Defendant further contends Victim's demeanor while intoxicated was not logically relevant because it did not speak to her demeanor during heated arguments. Even assuming Daughter's testimony was erroneously admitted, Defendant cannot prevail because this Court has already determined the State presented overwhelming evidence of his guilt. Because there was overwhelming evidence of guilt presented to the jury, Defendant was not prejudiced by Daughter's testimony, and "reversal would not be required in this case even if the [circuit] court erred in admitting it." *Gates*, 683 S.W.3d at 734.

The circuit court did not err—plainly or otherwise—by admitting Daughter's testimony. Point II is denied.

**Conclusion**

The circuit court's judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Thomas C. Clark II, C.J. and
Renée Hardin-Tammons, J. concurs.

14